[No. B092972. Second Dist., Div. Four. Jan. 31, 1996.]

RESURE, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GEOFFREY PALMER et al., Real Parties in Interest.

COUNSEL

Ronald P. Kaplan and Stephen Youngerman for Petitioner.

No appearance for Respondent.

Ford Law Firm, William H. Ford III and George H. Kim for Real Parties in Interest.

OPINION

**VOGEL (C. S.), J.**—Petitioner Resure, Inc., filed a complaint for rescission and declaratory relief against respondents Dan Palmer and Geoffrey Palmer, doing business as G. H. Palmer Associates. The complaint alleged that the Palmers misrepresented material facts or failed to disclose facts concerning potential claims in their application for insurance which would have affected Resure's decision to underwrite coverage. Resure's offer to rescind and restore the premiums was stated in the complaint, but not in any notice or letter sent prior to filing it. Resure moved for summary judgment, and the Palmers opposed on the ground that Resure failed to comply with Insurance Code section 650's requirement that a "right to rescind a contract of insurance . . . given to the insurer by any provision of this part" be exercised "previous to the commencement of an action on the contract." The trial court denied the motion on the basis that rescission of an insurance contract could not be initiated by a lawsuit without first giving notice of intent to rescind and tendering any unearned premiums. We granted an alternative writ to clarify the meaning of section 650 and its impact on an insurer's right to rescind. We hold that "action on the contract" means action to enforce the insurance contract, and that section 650 does not bar an insurer's action for rescission.

STATEMENT OF FACTS

In January of 1993, G. H. Palmer Associates, the fictitious business name of Geoffrey Palmer, submitted an insurance application to Resure through a

broker.[1] The application asked for a listing of all claims and occurrences that might give rise to claims for the prior five years. The completed form stated: "Applicant will issue statement of no loss." In reliance on that information, the broker agreed on Resure's behalf to issue policy No. DOL 172273, effective from February 10, 1993, to February 10, 1994. Subsequently, in March of 1993, G. H. Palmer Associates submitted a letter confirming that it "has not had any losses since it began its current operation on 2-18-92," and requesting that Geoffrey Palmer and Dan Palmer be included as named insureds.

In fact, both G. H. Palmer Associates and the Palmers, jointly or separately, had been named defendants in at least four lawsuits at the time the application was submitted: (1) Shabazian v. Warner Center Summit (Super Ct. L.A. County, 1991, No LC007543), filed April 5, 1991, naming "G. H. Palmer & Associates" as a defendant; (2) Steinmetz v. G. H. Palmer & Associates (Super. Ct. L.A. County, 1989, No. NVC 21201), filed May 17, 1989; (3) Tracy v. Gerjets, Inc. (Super. Ct. L.A. County, 1990, No. LC001418), filed June 28, 1990, naming G. H. Palmer Associates as a defendant; and (4) Newhall Land & Farming Co. v. Easton Investments II (U.S. Dist. Ct. (E.D.Cal.), 1992, No. 91-2162-CBM-ex), filed in March of 1992, naming Geoff Palmer and Dan Saxon Palmer as defendants (the Newhall action).

In the Newhall action, judgment was entered for plaintiffs in March of 1993. In August of 1993, Westcreek Properties, Ltd., one of the defendants, tendered the defense of further proceedings to Resure. Thereafter, a group of plaintiffs, Geoffrey Palmer and Dan Palmer among them, brought suit for declaratory relief to determine coverage in the Newhall action against various insurance companies, including Resure, in Palmer v. Truck Ins. Exchange (Super. Ct. L.A. County, 1993, No. BC 086 419).[2] The allegations relating to Resure stated that "Defendants Resure, Inc., . . . and Does 31 through 35, inclusive (hereinafter 'Resure') issued policies to plaintiffs, including the following: [¶] a. On or about June 8, 1991, policy #DOL144812" and that "[a]n actual controversy has arisen and now exists between plaintiffs and defendant Resure concerning their respective rights and duties in that plaintiffs contend they are entitled to be defended under the above-identified policies and any others which defendant may have issued . . . ." The complaint sought a declaration that Resure was obligated

---

[1] Because the issue we address is purely legal, we recite the facts which were before the trial court in deciding the motion for summary judgment. We do not intend by this recitation of facts to imply the truth thereof.

[2] Respondents refer to this as "the *Palmer* action," a confusing designation because of the number of lawsuits in which the Palmers are involved, so we refer to it as "the Newhall Coverage action."

to defend, indemnify, and reimburse defense costs in the Newhall action. In October of 1993, Resure moved for summary judgment in the Newhall Coverage action, contending that policy No. DOL 144812, issued to Gerjets, naming Westcreek Properties as additional insured, and renewed as DOL 158765, did not apply to the loss. The motion was denied. Thereafter, Resure agreed to defend certain parties, including the Palmers, in the Newhall action, under a reservation of rights. In March of 1994, the complaint in the Newhall Coverage action was dismissed without prejudice.

In the meantime, in September of 1993, during the effective period of the insurance policy at issue in this litigation, the Palmers were sued by certain members of the Valencia Vista Homeowners Association for construction defects in the case of Smith v. Westcreek Properties, Ltd. (Super. Ct. L.A. County, 1993, No. PC 010845) (the Smith action). The Palmers tendered defense of the Smith action to Resure in October of 1993. Resure agreed to defend subject to a reservation of rights. Shortly thereafter, in December of 1993, a cross-claim was filed in the Smith action against the Palmers by the homeowners association itself which was also tendered to Resure. Resure again agreed to defend, presumably also subject to a reservation of rights.

In December of 1993, Resure filed the complaint for rescission and declaratory relief which underlies this writ petition. The complaint alleges that in October of 1993, Resure discovered facts which led it to suspect that the Palmers had lied or concealed material facts in the application that led to issuance of policy No. 172273, effective February 10, 1993.[3] Resure filed a similar complaint against Gerjets and Westcreek Properties—Resure, Inc. v. Gerjets, Inc. (Super Ct. L.A. County, 1993, No. 095116). The two cases were consolidated. Geoffrey Palmer cross-claimed against Resure for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious breach of the implied covenant based on Resure's refusal to reimburse Palmer for attorney fees incurred in the Newhall and Smith actions; refusal to pay a settlement demand in the Newhall action; and its attempt to rescind the policy by filing the complaint.

Resure moved for summary judgment based on its claim for rescission. The papers filed in support of and opposition to the motion recited the facts as we have related them. In opposition, the Palmers cited section 650 of the

---

[3]Despite alleging that discovery took place in October in its complaint, Resure asserts in its petition that it did not discover the facts leading to its decision to rescind until December of 1993 and sought to establish that discovery occurred in December in its motion for summary judgment. However, the Palmers disputed that fact and contended in their additional statement of undisputed facts that October was the correct date. Resure did not dispute the Palmers' date in its response to their statement of additional undisputed facts. For purposes of the summary judgment motion, the October date must be deemed to be accurate.

Insurance Code which provides in pertinent part: "Whenever a right to rescind a contract of insurance is given to the insurer by any provision of this part such right may be exercised at any time previous to the commencement of an action on the contract." The Palmers contended that Resure's action for rescission and the Newhall Coverage action were actions on the contract.[4] The Palmers further contended that there was a triable issue concerning reliance and that Resure had waived its right to rescind by: (1) seeking summary judgment in the Newhall Coverage action on the merits rather than attempting to rescind; (2) failing to rescind within a reasonable time; (3) agreeing to provide a defense in the Newhall action; and (4) agreeing to provide a defense to the complaint and cross-claim in the Smith action.

The trial court considered only the issue of whether the action for rescission itself constituted an "action on the contract" under Insurance Code section 650, and concluded it did. It held that since Resure had not noticed or attempted to rescind the policy prior to the filing of the complaint, Resure's action for rescission was barred. On that ground, the motion for summary judgment was denied. Resure sought immediate review by way of a petition for writ. Because this aspect of the statute has not been interpreted at the appellate level, and because of its importance to insurers and policyholders, we granted an alternative writ.

DISCUSSION

I

Prior to undertaking our analysis of the provisions of Insurance Code section 650, we believe it is instructive to recognize that loss of the right to rescind would not have a definitive impact on Resure's ability to avoid coverage. ■ It has long been held that rescission is not the sole remedy for an insurer who has been subjected to misrepresentations and concealment of material facts by an applicant. "This specification in the Insurance Code of circumstances under which a party to an insurance contract may rescind does not mean that rescission in any such case is the exclusive remedy. These provisions of the Insurance Code are in the nature of special provisions pertaining to insurance contracts, which are superimposed upon those provisions of law which govern contracts generally. . . . [¶] It seems clear, therefore, that the rights of rescission which the Insurance Code recognizes

---

[4]In their opposition to the summary judgment motion, the Palmers also sought to establish that a complaint brought against Resure and others in February of 1994, Maryland Casualty Co. v. AIG (Super. Ct. L.A. County, 1994, No. BC 099699), barred the rescission. The Palmers appear to have abandoned this argument, as it does not appear in their opposition to the writ petition. In any event, there is no evidence in the record to establish which Resure policies were at issue in that litigation.

and limits are not in derogation of other remedial rights which are recognized and implemented by other provisions of law. . . ." (*De Campos* v. *State Comp. Ins. Fund* (1954) 122 Cal.App.2d 519, 529 [265 P.2d 617].)

*De Campos* was relied on by the court in *Williamson & Vollmer Engineering, Inc.* v. *Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261 [134 Cal.Rptr. 427], in which the insured had withheld information of a pending claim in its application for insurance. At trial, the insurer established that had it known of the claim, it would have issued the policy with an endorsement excluding the claim. (*Id.* at p. 273.) The insured sought to hold the insurer liable for the costs of defense and indemnification, proving that not only had the insurance company failed to rescind the policy and return the premiums paid when it learned of the concealed claim, but that it had also undertaken the defense of another claim and renewed the coverage for a further term. (*Id.* at p. 274.) The trial court permitted the policy to be reformed to exclude the concealed claim, and the appellate court affirmed because: " 'Rescission is not the exclusive remedy of one who has become entitled to avoid a contract by reason of acts or omissions of the other party to it which are fraudulent in their nature. He may cancel the contract by its rescission; or he may seek affirmative relief in a court of equity for any injury sustained by the wrongful act or omission of the other; or he may set up the fraud by way of defense to an action brought to enforce the apparent liability. [Citations.]' . . . [¶] There is no merit to [the insured's] contention that the court has granted inappropriate relief." (*Id.* at p. 275, quoting *California Co.* v. *New Zealand Ins. Co.* (1913) 23 Cal.App. 611, 615 [138 P. 960].)

*De Campos* was also cited by the Supreme Court in *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674], where it was held that under certain circumstances an automobile liability insurer could not rescind its policy when it failed to investigate representations contained in the application. The court pointed out that loss of the right to rescind did not leave the company remediless: "The insurer may still prosecute a cause of action against the insured for damages for wrongful misrepresentation, after satisfying the injured person's claim, or, in an action brought by the insured, after he has satisfied a judgment against him by the injured person, defend on the ground of misrepresentations in the application." (*Id.* at p. 681.)

Relying on *Barrera*, a federal district court stated in denying a motion for summary judgment brought to defeat an insurance company's claim for rescission: "Regardless of whether section 650 bars rescission at this stage, [the insurance company] is clearly entitled to proceed with proof of misrepresentation as a defense to movants' claims of wrongful insurance practices.

[Citation.] If there was no representation, then movants may be able to obtain damages and the other relief they seek in their counterclaim. If there has been misrepresentation, then [the insurance company] should be made whole for its losses; whether or not the Court then goes on to label the policies 'rescinded' is a formality with no further substantive effect on the rights of any of the parties here." (*Nat. U. Fire Ins. Co. of Pittsburgh, Pa.* v. *Dixon* (N.D.Cal. 1987) 663 F.Supp. 1121, 1123.)

Established law clearly affords the insurer the right to avoid coverage by way of cross-claims and affirmative defenses when the insured files an action on the contract before the insurer can file its action for rescission. Respondent's reliance on Insurance Code section 650 to preclude an insurer's action for rescission where no action has been filed by the insured is neither logical nor promising.

## II

Section 650 of the Insurance Code was enacted as part of the Civil Code by the 20th session of the Legislature in 1874. (Code Amends. 1873-1874 (Civ. Code), ch. 612, § 237, p. 255.) In 1935, it was transferred to the newly established Insurance Code where it has remained, unchanged in all pertinent respects.[5] (Stats. 1935, ch. 145, § 650, p. 512.) At that time, the Legislature stated: "The provisions of this code in so far as they are substantially the same as existing statutory provisions relating to the same subject matter shall be construed as restatements and continuations thereof, and not as new enactments." (*Id.*, § 2, p. 496.)

Insurance Code section 650 appears under the heading "Time for exercising right." It specifies when an insurer may rescind, but not the procedures for accomplishing rescission: "Whenever a right to rescind a contract of insurance is given to the insurer by any provision of this part such right may be exercised at any time previous to the commencement of an action on the contract." (Ins. Code, § 650.)

The procedures governing rescission are set forth in sections 1689 through 1693 of the Civil Code. Section 1691 in particular provides: "[T]o effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind . . . : (a) Give notice of rescission to the party as to whom he rescinds; and [¶] (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore

---

[5] A 1983 amendment added a second sentence: "The rescission shall apply to all insureds under the contract, including additional insureds, unless the contract provides otherwise." (Stats. 1983, ch. 389, § 1, pp. 1625-1626.) This provision is not at issue here.

the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so. [¶] When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." (Civ. Code, § 1691.)

■ In general, a statute should be interpreted in accordance with the ordinary meaning of its words. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134].) But a statute will not be given a literal meaning if doing so will result in absurd consequences which the Legislature could not have intended. (*Ibid.*; *Melamed* v. *City of Long Beach* (1993) 15 Cal.App.4th 70, 77 [18 Cal.Rptr.2d 729].) And where the terms of a statute are ambiguous the court must attempt to ascertain the Legislature's purpose by taking its words " ' "in the sense in which they were understood at the time the statute was enacted." ' " (*People* v. *Fair* (1967) 254 Cal.App.2d 890, 893 [62 Cal.Rptr. 632].) "[I]n determining the intent of a statutory enactment it is important to consider the state of the law as it existed prior to the enactment of the provision at issue." (*People* v. *Horn* (1984) 158 Cal.App.3d 1014, 1031 [205 Cal.Rptr. 119].) "Matters to be considered include the context of the legislation, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction." (*Flowmaster, Inc.* v. *Superior Court* (1993) 16 Cal.App.4th 1019, 1028 [20 Cal.Rptr.2d 666].)

■ Looking at the language of Insurance Code section 650, we cannot agree with respondents that its meaning is plain on its face. Numerous cases have recognized that the phrase "action on [the] contract" is ambiguous. (See, e.g., *Morgan* v. *Reasor Corp.* (1968) 69 Cal.2d 881, 896-897 [73 Cal.Rptr. 398, 447 P.2d 638] [interpreting that portion of section 1811.1 of the Unruh Act (Civ. Code, § 1801 et seq.) which provides that attorney fees will be "awarded to the prevailing party in an action *on a contract*"]; *Hastings* v. *Matlock* (1985) 171 Cal.App.3d 826, 840-841 [217 Cal.Rptr. 856] [in an action for rescission, interpreting section 1717 of the Civil Code permitting an award of attorney fee to the party prevailing *"on the contract"*]; *Leaf* v. *Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 377-379 [120 Cal.Rptr. 749] [in the context of a rescission, interpreting section 2983.4 of the Civil Code which provides: "Reasonable attorney's fees and costs shall be awarded to the prevailing party in any action *on a contract*"], italics added.) The phrase could mean either "action involving the contract" or "action to enforce the contract." An action for rescission would fit within the former definition, but not the latter.

Adding to the ambiguity is the fact that there were significant distinctions between two types of "rescission" recognized by the courts and the Legislature at the time Insurance Code section 650 was enacted. Rescission accomplished by the unilateral act of one of the parties to the contract without the assistance of the court, referred to as "rescission in pais," was governed by sections 1689 through 1691 of the Civil Code. (*McCall* v. *Superior Court* (1934) 1 Cal.2d 527, 535-536 [36 P.2d 642, 95 A.L.R. 1019]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 877, pp. 788-789.) Section 1691 required notification and restoration of, or offer to restore, benefits received. A party who performed the statutory requirements had accomplished a rescission in pais, and brought an action, not for rescission, but for money had and received or claim and delivery or some similar legal remedy if the other party would not return the consideration he had obtained. (*Philpott* v. *Superior Court* (1934) 1 Cal.2d 512, 523-524 [36 P.2d 635, 95 A.L.R. 990]; *Joyce* v. *Shafer* (1893) 97 Cal. 335, 338 [32 P. 320].)

The other type, accomplished by an action in equity for rescission, was referred to as "equitable" or "judicial" rescission and was governed by former sections 3406 through 3408 of the Civil Code. (*McCall* v. *Superior Court, supra*, 1 Cal.2d at pp. 535-536.) Here too, the general rule was that notice and offer to restore benefits had to be given prior to initiating a lawsuit seeking equitable rescission. (*Ibid.*; *Zeller* v. *Milligan* (1925) 71 Cal.App. 617, 625-626 [236 P. 349], and cases cited therein.) But the rule was subject to numerous exceptions, including exceptions recognized in situations where "the rights of the [other party could] be fully protected by the [equitable] decree" or where, "without any fault of the plaintiff, peculiar complications [arose] which [made] it impossible for plaintiff to offer full restoration." (*Id.* at p. 626; *California etc. Co.* v. *Schiappa-Pietra* (1907) 151 Cal. 732, 740 [91 P. 593].) Thus, it was frequently said where the plaintiff had given notice in the complaint and indicated his willingness to restore benefits after determination of the suit: "The law abhors idle acts. A formal notice of rescission on the same day on which the suit was instituted would have given the defendants no information differing either in nature or extent from that contained in the allegations of the complaint; nor were defendants' rights in the premises in any manner changed or prejudiced by reason of the plaintiff's failure to give such notice." (*Zeller* v. *Milligan, supra*, 71 Cal.App. at p. 627; *Stegeman* v. *Vandeventer* (1943) 57 Cal.App.2d 753, 761 [135 P.2d 186].)

In 1961, the equitable action was abolished, and the two sets of statutes merged into the governing provisions now found at sections 1689 thorough 1693 of the Civil Code. (See *Statutory Changes in the Law of Rescission in*

*California* (1968) 19 Hastings L.J. 1248.) At that time, the final paragraph of Civil Code section 1691—recognizing that "[w]hen notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both"—was added to the Code. (Stats. 1961, ch. 589, § 2, p. 1734.)

When Insurance Code section 650 was enacted, the distinction between an action on the contract at law and an action for equitable rescission was of great significance because of the artificial separation between law and equity. Equity would not assume jurisdiction when the plaintiff had a clear remedy at law. (See *Lewis* v. *Tobias* (1858) 10 Cal. 574, 575-578; *Manchester Fire Assur. Co.* v. *Stockton Combined Harvester & Agricultural Works* (C.C.Cal. 1889) 38 Fed. 378.) It followed that once an action to enforce a contract was commenced at law, the party holding a right to rescind was expected to raise that as a defense rather than bring a new action in equity. (*Ibid.*)

The rule that equitable rescission would not be permitted where there was an adequate remedy at law, taken together with the rule that an applicant's fraud could be raised as a defense to an action on the policy, clarifies what is meant by Insurance Code section 650's limitation on the right of an insurer to rescind the policy to the time "previous to the commencement of an action on the contract." The Legislature intended that the insurer be precluded from rescinding once the insured had proceeded with an action to enforce the insurance contract at law. (See 17 Couch on Insurance (2d ed. 1983) § 67:382, p. 792 ["In some jurisdictions, the fact that the insured or the beneficiary has commenced an action on the policy is held to bar a separate action for the judicial rescission of the policy, the insurer in such circumstances being relegated to raising the ground for rescission as a defense in the action on the policy. So it has been held that if an action has been brought to enforce a contract of insurance such suit affords an adequate remedy which defeats jurisdiction in equity of a separate suit to cancel the policy; and where an action at law had been begun on the policy to which the insurer could set up fraud as a defense, equity should not entertain a suit to cancel the policy"].) The point was merely to guarantee that resort to equity was not needlessly made where the insurer had ample opportunity to raise the same issues in defense of the action on the policy. As we have indicated in our earlier discussion, California law affords that opportunity to insurers where the insured fires the first shot.

The alternative analysis espoused by respondents is not persuasive. Respondents suggest that the intent of the Legislature was to make certain that

insurance companies give notice and offer to restore premiums before initiating an action for rescission. But section 1691 of the Civil Code enacted in 1872, and established common law, already required notice and restoration or offer to restore benefits prior to rescinding any contract, whether by way of equitable rescission or rescission in pais. The statute did nothing to alter or enhance these procedures. If by enacting Insurance Code section 650, the Legislature had intended to emphasize the already existing requirement that an insurance company give notice and restore premiums prior to bringing an action for equitable rescission, it would have said so plainly. If it intended to abolish an insurer's right to judicial rescission, as respondent's alternatively suggest, that intent, too, would have been expressed in more straightforward language. The only rational conclusion that can be drawn from the Legislature's choice of words is that they did not understand "action on the contract" to mean equitable action to rescind an insurance contract but an action brought at law to enforce the insurance policy.

## DISPOSITION

The alternative writ, having served its purpose, is discharged. Let a peremptory writ of mandate issue compelling respondent court to set aside its order of May 4, 1995, denying Resure's summary judgment motion, and to reconsider the motion in conformity with the view expressed herein concerning Insurance Code section 650 and rule upon the remaining issues to the extent necessary.

Epstein, Acting P. J., and Hastings, J., concurred.