176 Cal.App.4th 12 (2009)
SUPERIOR DISPATCH, INC., Plaintiff and Appellant,
v.
INSURANCE CORPORATION OF NEW YORK, Defendant and Respondent.
No. B204878.
Court of Appeals of California, Second District, Division Three.
July 30, 2009.
*17 Pierry Shenoi, Allan A. Shenoi; Law Offices of Daniel J. Koes, Daniel J. Koes; Brown Shenoi Koes and Daniel J. Koes for Plaintiff and Appellant.
Steven B. Stevens for Consumer Attorneys of California and United Policyholders as Amici Curiae on behalf of Plaintiff and Appellant.
John Metz as Amicus Curiae on behalf of Plaintiff and Appellant.
Lewis Brisbois Bisgaard & Smith and Raul L. Martinez for Defendant and Respondent.

OPINION
CROSKEY, J.
Superior Dispatch, Inc. (Superior), appeals a summary judgment in favor of its insurer, Insurance Corporation of New York (Inscorp). The trial court granted summary judgment based on a one-year contractual limitations provision in the policy and concluded that Inscorp's failure to notify Superior of the provision did not support an equitable estoppel to assert the provision. Superior's principal contention on appeal is that Inscorp had a duty to notify Superior of the contractual limitations provision under a Department *18 of Insurance regulation (Cal. Code Regs., tit. 10, § 2695.4, subd. (a)),[1] and that Inscorp is equitably estopped from asserting the limitations period because it failed to provide the required notice. Superior also challenges the sustaining of a demurrer to its fraud count and the striking of its punitive damages allegations.
We conclude that section 2695.4, subdivision (a) requires an insurer to notify its insured claimant of contractual limitations provisions and other policy provisions that may apply to the claim, regardless of whether the insured is represented by counsel. An insurer's failure to notify its insured of a contractual limitations provision establishes an equitable estoppel to rely on the provision if the insured had no actual knowledge of the provision and the insured's failure to discover the provision by other means was reasonable. Inscorp failed to show the absence of a triable issue of fact as to equitable estoppel and therefore is not entitled to summary judgment based on the contractual limitations period. We also conclude that Superior adequately alleges a count for fraudulent concealment and grounds for punitive damages. We therefore reverse the judgment with directions.

FACTUAL AND PROCEDURAL BACKGROUND

1. Insurance Policy

Superior is a trucking company that provides drayage and other short-haul services. RSI Insurance Brokers, Inc. (RSI), acting on behalf of Superior, submitted an application for insurance to Crump Underwriting Services, Inc. (Crump), acting on behalf of Inscorp. The application stated that Superior was a common carrier, identified the commodities hauled as "P[r]oduce," "food goods & canned foods beer/wine," "textiles," and "paper products," and listed the percentage of each, totaling 100 percent.
Inscorp, through Crump, issued an insurance policy to Superior in August 2002. The policy included coverage forms entitled "Truckers Coverage Form," "Motor Truck Cargo Owners and Truckmens Form" (Cargo Coverage Form), and "Commercial General Liability Coverage Form."
The Truckers Coverage Form provided coverage for both liability and property damage relating to designated "`autos.'" The liability coverage extended to "all sums an `insured' legally must pay as damages because of `bodily injury' or `property damage' to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of a *19 covered `auto'." Among the coverage form exclusions was an exclusion for damage to property in the insured's care, custody, or control. The coverage form stated, "`Auto' means a land motor vehicle, `trailer' or semitrailer designed for travel on public roads but does not include `mobile equipment'." The term "`mobile equipment'" was defined to include principally vehicles designed for use off of public roads, vehicles on crawler treads, vehicles permanently attached to construction equipment, and vehicles used primarily for purposes other than the transportation of persons or cargo.
The Cargo Coverage Form provided liability coverage relating to loss of or damage to cargo in transit. It also provided optional property damage coverage, but that option was not selected. The coverage form stated: "This policy covers the legal liability of the Insured as a common or contract carrier under tariff documents, bills or [sic] lading or shipping receipts issued by the Insured, for direct loss or damage caused by any of the perils specified herein to lawful goods and merchandise consisting principally of CONTAINERIZED FREIGHT, PRODUCE, CANNED GOODS, BEER & WINE, PAPER PRODUCTS, TEXTILES in transit while loaded for shipment in or on vehicles described herein. . . ."[2] The capitalized language was typed onto blank lines on the printed form. The coverage form exclusions stated that the cargo coverage did not cover "Autos."[3] The coverage form did not define that term. The coverage form conditions included a one-year contractual limitations provision.[4] An "All Risk Endorsement" modifying the Cargo Coverage Form stated that the liability coverage was extended to a broad category of risks, but expressly excluded "Autos." The endorsement likewise did not define that term.
The Commercial General Liability Coverage Form provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies." It also provided coverage for "`personal and advertising injury'" and certain medical expenses. The exclusions stated that the coverage form did not provide coverage for "`[b]odily injury'" or "`property damage'" *20 arising out of the use of any "`auto'" owned or operated by the insured or the use or transportation of "`mobile equipment,'" or coverage for "`[p]roperty damage'" to personal property in the insured's care, custody, or control. The coverage form stated: "`Auto' means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But `auto' does not include `mobile equipment.'"
The first pages of the Truckers Coverage Form and Commercial General Liability Coverage Form each stated that "words and phrases that appear in quotation marks have special meaning." The Cargo Coverage Form did not so state, and no words or phrases appeared in quotation marks on that form. The Common Policy Conditions stated that all coverage parts were subject to several conditions. Those conditions did not include any definition of terms.

2. Claim and Its Denial

Matson Navigation Company (Matson) hired Superior to carry freight by truck from a terminal at the Port of Los Angeles to another location. The freight included a dump truck on a flat rack trailer. The cab of the dump truck struck an overpass on July 10, 2003, while the trailer was passing under the bridge. Matson notified Superior that its customer had rejected the dump truck, and demanded payment from Superior for its full value pursuant to the terms of its contract with Superior.
Superior submitted a claim to Inscorp on July 17, 2003. Inscorp's claims adjuster, Fleming & Hall Administrators, Inc. (F & H), sent a letter to Superior on November 5, 2003, stating that the claim was denied. The letter stated that there was no property damage coverage under the Truckers Coverage Form because the dump truck was in Superior's care, custody, or control when it was damaged. The letter stated that there was no liability coverage under the Commercial General Liability Coverage Form for the same reason and also because that coverage form excluded "autos" from coverage. The letter stated that there was no coverage under the Cargo Coverage Form because the Cargo Coverage Form also excluded "autos." Inscorp did not receive the letter at that time, apparently because it was misaddressed. F & H sent a copy of the letter by fax to RSI on November 21, 2003, and Superior received the letter on that date. The letter did not notify Superior of the one-year contractual limitations provision.
RSI's notes indicate that on November 12, 2003, someone from RSI contacted Reginald Smith of Crump, who purportedly indicated that "he likes to give F & H the chance to rec[]tify. He provided me w/ the name of the Program Mgr., Sherry Healy xt 3109. I said I would contact her to discuss & see if . . . resolution could be arrived at."
*21 Superior retained legal counsel. Danh T. Luu, an attorney, sent a letter to F & H on January 7, 2004, challenging the claim denial and alleging that the denial was in bad faith. RSI also corresponded with Inscorp on January 13, 2004, urging it to reconsider the denial.
Raul L. Martinez, as counsel for Inscorp, sent a letter to Luu on February 11, 2004. The letter stated: "We have reviewed the coverage position taken by our client on this claim, as well as your letter of January 7, 2004. However, please be advised that we concur with our client's determination that there is no coverage under the policy for this loss." The letter explained counsel's position that the dump truck was an "auto" and therefore was excluded under the policy. The letter also stated that counsel was "prepared to defend our client's position on coverage regarding this claim," and that Inscorp had instructed counsel to file a declaratory relief action, if necessary. The letter did not refer to the one-year contractual limitations provision. Luu never responded to the letter.
RSI continued to seek payment of the claim on Superior's behalf. George Estok of Crump stated in correspondence with Mike Tatum of RSI on March 17, 2004, in response to a phone message: "[O]ur defense counsel did send a denial letter to the insured's attorney and we have not gotten a response. We suggest that you discuss this matter with the insured's attorney. Sorry that I can't be of more help." RSI's notes also indicate that someone from RSI contacted Sherry Healy of F & H on March 18, 2004, "to ask for a formal denial." The notes state, "She said one had been issued to the insds atty & she is waiting for a response frm . . . the insds atty. She will fax a copy of the denial." There apparently was no further significant communication until Superior filed its complaint in this action.

3. Complaint, Demurrer, and Motion to Strike

Superior filed a complaint against Inscorp and RSI on May 20, 2005, and filed its fourth amended complaint in December 2006. Superior alleges that it became contractually liable to Matson for damage to "containerized freight" that it was carrying for Matson when part of the load struck a bridge. It alleges that the Cargo Coverage Form provides coverage for its liability, that Inscorp failed to adequately investigate the claim, and that the denial of its claim was wrongful and in bad faith. It also alleges that Inscorp failed to provide notice of the one-year contractual limitations provision at any time, that Superior had no actual knowledge of the provision, that Inscorp is equitably estopped from relying on the provision, and that the contractual limitations period was equitably tolled.
*22 Superior also alleges that the insurance application submitted by RSI "did not accurately describe [Superior's] business" and that Superior did not review or approve the contents of the application. It alleges that the information listed on the application concerning the commodities hauled was "false." Superior alleges that RSI initially submitted an unsigned application to Crump and later obtained Superior's signature on a single page, which Superior subsequently discovered was the last page of an application.
Superior alleges counts for (1) breach of the insurance contract, against Inscorp; (2) breach of the implied covenant of good faith and fair dealing, against Inscorp; (3) breach of an oral, implied-in-fact, and partly written contract, against RSI; (4) negligence and negligent misrepresentation/concealment, against RSI; (5) breach of fiduciary duty/constructive fraud, against RSI; (6) fraud, against both defendants; and (7) unfair competition (Bus. & Prof. Code, § 17200 et seq.), against both defendants. Superior alleges in the fraud count that Inscorp concealed its lack of familiarity with the drayage business and falsely advertised itself as competent in this line of insurance. Superior alleges in the unfair competition count that Inscorp falsely advertised and made misrepresentations concerning its familiarity with the drayage business, that it failed to disclose the contractual limitations period as required by section 2695.4, subdivision (a), and that its conduct was unlawful, unfair, and fraudulent.
Inscorp demurred to the fourth amended complaint. As to the fraud count, Inscorp argued that Superior failed to allege with particularity the facts supporting its claims of misrepresentation and concealment. The court sustained the demurrer to the fraud count without leave to amend. Inscorp also moved to strike punitive damages allegations in the second and sixth counts on the grounds that the allegations of oppression, fraud, and malice were conclusory and that the facts alleged in the complaint did not support an award of punitive damages. The court granted the motion.

4. Summary Judgment

Inscorp filed a motion for summary judgment or summary adjudication in July 2007. It argued that the one-year contractual limitations period barred the complaint in its entirety. Inscorp argued that it unequivocally denied the claim in November 2003, that it never agreed to reconsider the claim, and that Superior's requests for reconsideration did not give rise to equitable tolling. Inscorp also argued that it had no obligation to "provide written notice of any statute of limitation or other time period requirement upon which the insurer may rely to deny a claim" pursuant to section 2695.7, subdivision (f) because Superior was represented by counsel, that section 2695.4, subdivision (a) was inapplicable, and that there was no basis for *23 equitable estoppel. Inscorp argued further that there was no coverage under the terms of the policy and that misrepresentations and concealments made in the insurance application invalidated the policy, among other grounds.
Superior argued in opposition that section 2695.4, subdivision (a) applied and created a duty to notify Superior of the contractual limitations provision. Superior cited evidence that Inscorp failed to notify Superior of the provision in its correspondence with Superior and presented its own response to an interrogatory stating that it had no actual knowledge of the provision. Superior also argued that a duty to notify it of the contractual limitations period arose under section 2695.7, subdivision (f), that equitable estoppel and equitable tolling applied, and that Inscorp failed to show that there could be no coverage under the policy, among other arguments.
The trial court concluded that the entire action was barred by the one-year contractual limitations period. The court determined that section 2695.7, subdivision (f) rather than section 2695.4, subdivision (a) controlled because the former was more specific, and that Inscorp was not required to notify Superior of the contractual limitations provision because Superior was represented by counsel 60 days before the limitations period expired. The court concluded further that Superior had failed to create a triable issue of material fact as to equitable estoppel. The court therefore granted the summary judgment motion and entered judgment in favor of Inscorp. Superior timely appealed the judgment.

CONTENTIONS
Superior contends (1) Inscorp is equitably estopped from asserting the contractual limitations provision as a defense because Inscorp failed to notify Superior of the provision, as required by section 2695.4, subdivision (a); (2) Inscorp reopened the claim on November 12, 2003, reconsidered the claim denial, and never unequivocally denied the claim after that date, so Inscorp is equitably estopped from asserting the contractual limitations provision as a defense, and the limitations period was equitably tolled; (3) the unfair competition count is not governed by the contractual limitations provision, so the summary adjudication of that count based on the contractual limitations provision was error; (4) the complaint adequately alleges fraudulent concealment, so the sustaining of the demurrer to its fraud count was error; and (5) the striking of its punitive damages allegations was error.

DISCUSSION

1. Standards of Review

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to a judgment as a matter of law. (Code *24 Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (Id., subd. (p)(2).) A defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to support an element of the cause of action. (Miller v. Department of Corrections (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].) If the defendant meets this burden, the burden shifts to the plaintiff to set forth "specific facts" showing that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).) We review the trial court's ruling de novo, liberally construe the evidence in favor of the opposing party, and resolve all doubts concerning the evidence in favor of the opposing party. (Miller, supra, at p. 460.)
The sustaining of a demurrer without leave to amend to one of several counts alleged in a complaint is reviewable on appeal from a subsequent judgment. (Jennings v. Marralle (1994) 8 Cal.4th 121, 128 [32 Cal.Rptr.2d 275, 876 P.2d 1074].) We independently review the ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action. (McCall v. PacifiCare of Cal., Inc. (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. (Schifando v. City of Los Angeles (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (Ibid.)
We independently review the ruling on a motion to strike punitive damages allegations, assume the truth of the factual allegations in the complaint, and determine whether they could support an award of punitive damages. (Clauson v. Superior Court (1998) 67 Cal.App.4th 1253, 1255 [79 Cal.Rptr.2d 747].)

2. Triable Issues of Fact as to Whether Inscorp Is Equitably Estopped from Asserting the Contractual Limitations Provision Preclude Summary Judgment Based on the Provision

a. Applicable Law of Equitable Estoppel

(1) A defendant may be equitably estopped from asserting a statutory or contractual limitations period as a defense if the defendant's act or omission caused the plaintiff to refrain from filing a timely suit and the plaintiff's reliance on the defendant's conduct was reasonable. (Lantzy v. Centex Homes (2003) 31 Cal.4th 363, 384-385 [2 Cal.Rptr.3d 655, 73 P.3d 517] (Lantzy); *25 Vu v. Prudential Property & Casualty Ins. Co. (2001) 26 Cal.4th 1142, 1152-1153 [113 Cal.Rptr.2d 70, 33 P.3d 487] (Vu); Spray, Gould & Bowers v. Associated Internat. Ins. Co. (1999) 71 Cal.App.4th 1260, 1268-1269 [84 Cal.Rptr.2d 552] (Spray).) The act or omission must constitute a misrepresentation or nondisclosure of a material fact, rather than law. (Vu, supra, at p. 1152.) The defendant need not intend to deceive the plaintiff to give rise to an equitable estoppel. (Lantzy, supra, 31 Cal.4th at p. 384; Vu, supra, 26 Cal.4th at pp. 1152-1153.)
"One aspect of equitable estoppel is codified in Evidence Code section 623, which provides that `[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' [Citation.] But `"[a]n estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. [Citation.] To create an equitable estoppel, `it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.' . . . `. . . Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense.'"' [Citations.]" (Lantzy, supra, 31 Cal.4th at p. 384.)
(2) Equitable estoppel "rests firmly upon a foundation of conscience and fair dealing." (City of Long Beach v. Mansell (1970) 3 Cal.3d 462, 488 [91 Cal.Rptr. 23, 476 P.2d 423].) "Professor Pomeroy emphasizes the broad equitable concepts underlying the doctrine in the following terms: `Equitable estoppel in the modern sense arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel.' (3 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 802, p. 180, fns. omitted.)" (Id. at p. 488, fn. 22.) "If one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent. [Citation.]" (3 Pomeroy, supra, § 818, p. 250.)
*26 A nondisclosure is a cause of injury if the plaintiff would have acted so as to avoid injury had the plaintiff known the concealed fact. (Mirkin v. Wasserman (1993) 5 Cal.4th 1082, 1093 [23 Cal.Rptr.2d 101, 858 P.2d 568].) The plaintiff's reliance on a nondisclosure was reasonable if the plaintiff's failure to discover the concealed fact was reasonable in light of the plaintiff's knowledge and experience. (Cf. Alliance Mortgage Co. v. Rothwell (1995) 10 Cal.4th 1226, 1239 [44 Cal.Rptr.2d 352, 900 P.2d 601] [misrepresentation]; Gray v. Don Miller & Associates, Inc. (1984) 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 674 P.2d 253] [same].) Whether the plaintiff's reliance was reasonable is a question of fact for the trier of fact unless reasonable minds could reach only one conclusion based on the evidence. (Alliance Mortgage, supra, at p. 1239.) The fact that a plaintiff was represented by counsel and the scope and timing of the representation are relevant to the question of the reasonableness of the plaintiff's reliance.

b. Sections 2695.4, Subdivision (a) and 2695.7, Subdivision (f)

Regulations enacted by the Department of Insurance require certain disclosures by insurers in connection with claims presented. Section 2695.4, subdivision (a) requires an insurer to notify its insured claimant of contractual limitations provisions and other policy provisions that may apply to the claim. Section 2695.4, subdivision (a) states, in pertinent part: "Every insurer shall disclose to a first party claimant or beneficiary, all benefits, coverage, time limits or other provisions of any insurance policy issued by that insurer that may apply to the claim presented by the claimant." The term "first party claimant" is defined as "any person asserting a right under an insurance policy as a named insured, other insured or beneficiary under the terms of that insurance policy, and including any person seeking recovery of uninsured motorist benefits." (§ 2695.2, subd. (f).) Thus, the term includes not only insureds making claims under first party policies, but also insureds making claims under third party liability policies. Section 2695.4, subdivision (a) does not specify when the required disclosure must be made.
Section 2695.7, subdivision (f) requires an insurer to notify a claimant of any statute of limitations and any "other time period requirement upon which the insurer may rely to deny a claim." (Ibid.) Section 2695.7, subdivision (f) states in pertinent part: "Except where a claim has been settled by payment, every insurer shall provide written notice of any statute of limitation or other time period requirement upon which the insurer may rely to deny a claim. Such notice shall be given to the claimant not less than sixty (60) days prior to the expiration date; except, if notice of claim is first received by the insurer within that sixty days, then notice of the expiration date must be given to the claimant immediately. . . . This subsection shall not apply to a claimant represented by counsel on the claim matter." The term "claimant" is defined *27 to include both a "first party claimant," defined above, and a "third party claimant," which is defined as "any person asserting a claim against any person or the interests insured under an insurance policy." (§ 2695.2, subd. (x).) Thus, section 2695.7, subdivision (f) requires notice not only to insured claimants, but also to third party claimants asserting claims against the insured.
The plain language of section 2695.7, subdivision (f) and its regulatory history indicate that the language "statute of limitation or other time period requirement upon which the insurer may rely to deny a claim" was intended to include contractual limitations provisions. The regulation as originally promulgated in 1992 referred to "statutes of limitations or . . . an insurance policy or contract time limit." (Register 92, No. 52 (Dec. 15, 1992).) A revised provision in its current form was adopted in 1997. (Register 97, No. 2 (Jan. 10, 1997).) The initial statement of reasons issued by the Department of Insurance stated that the purpose of the proposed revision of the provision was "for clarity" and to address the situation where "the time limitation that may run is specified by contract instead of by statute."[5] (Initial statement of reasons, p. 12.)
(3) The trial court concluded that section 2695.7, subdivision (f) was a more specific provision than section 2695.4, subdivision (a) in these circumstances and that, therefore, the former provision governed and the latter was inapplicable. We disagree. The rule that a specific statute prevails over a general one applies only if the two provisions cannot be reconciled. (Garcia v. McCutchen (1997) 16 Cal.4th 469, 478 [66 Cal.Rptr.2d 319, 940 P.2d 906].) We must construe two statutes dealing with the same subject in a way that harmonizes them, avoids conflict, and avoids rendering any part of either statute surplusage, if feasible. (Broughton v. Cigna Healthplans (1999) 21 Cal.4th 1066, 1086 [90 Cal.Rptr.2d 334, 988 P.2d 67]; DeVita v. County of Napa (1995) 9 Cal.4th 763, 778-779 [38 Cal.Rptr.2d 699, 889 P.2d 1019].) "If we can reasonably harmonize `[t]wo statutes dealing with the same subject,' then we must give `concurrent effect' to both, `even though one is specific and the other general. [Citations.]' [Citation.]" (Garcia, supra, at p. 478.) The same principles apply to the construction of administrative regulations. (Simi Corp. v. Garamendi (2003) 109 Cal.App.4th 1496, 1505-1506 [1 Cal.Rptr.3d 207].)
(4) Section 2695.4, subdivision (a) applies to contractual limitations provisions and other policy provisions that may apply to the claim and *28 applies only to first party claimants. Section 2695.7, subdivision (f), in contrast, applies to statutes of limitations and any "other time period requirement upon which the insurer may rely to deny a claim" (italics added) and applies to first party and third party claimants. Thus, the two regulations differ in scope. Although there is some overlap in that both regulations require an insurer to notify a first party claimant of contractual limitations provisions, this apparent redundancy does not indicate that either regulation was intended to supplant the other. Moreover, there is no conflict. An insurer can comply with both notice requirements with respect to contractual limitations provisions by timely providing written notice of those provisions.
Section 2695.4, subdivision (a) requires an insurer to disclose to its insured claimant any contractual limitations provision, and other policy provisions, that may apply to the claim. Unlike section 2695.7, subdivision (f), section 2695.4, subdivision (a) does not state that the notice requirement is inapplicable if the claimant is represented by counsel. The language in section 2695.7, subdivision (f), "This subsection shall not apply to a claimant represented by counsel on the claim matter," exempts an insurer from the notice requirement in section 2695.7, subdivision (f), but by its own terms does not exempt an insurer from the notice requirement in section 2695.4, subdivision (a).
We held in Spray, supra, 71 Cal.App.4th 1260, that the insurer had a duty under section 2695.4, subdivision (a) to inform its insured of a contractual limitations provision and that the failure to perform that duty could give rise to an equitable estoppel. (Spray, supra, at p. 1269.) We rejected the argument that the insured's constructive knowledge of the policy provisions precluded an equitable estoppel. We stated that section 2695.4, subdivision (a) was intended to ensure that all insured claimants receive actual notice of any contractual limitations provision after the claim is presented, regardless of how conspicuous the provision may be in the policy. (Spray, supra, at pp. 1272-1273.) We stated that the purpose of this requirement was "to remedy the trap for the unwary." (Id. at pp. 1270-1271.) We concluded that the existence of a triable issue of material fact as to whether the insured had actual knowledge of the provision precluded summary judgment. (Id. at pp. 1265-1266.)

c. Inscorp Is Not Entitled to Summary Judgment Based on the Contractual Limitations Provision

(5) Superior alleges in its complaint that Inscorp failed to provide notice of the one-year contractual limitations provision, as required by section 2695.4, subdivision (a), at any time and that Superior had no actual knowledge of the provision. These allegations relating to notice of the policy terms *29 concern the nondisclosure of facts, rather than legal conclusions. Inscorp presented no evidence to controvert these allegations. The fact that Superior retained counsel before the expiration of the contractual limitations period to send a letter challenging the denial of the claim on other grounds does not establish as a matter of law that Superior's reliance on the nondisclosure was unreasonable. The reasonableness of Superior's reliance on Inscorp's nondisclosure of the contractual limitations provision, that is, the reasonableness of Superior's failure to discover the provision by other means, is a question of fact. Cases holding that a plaintiff could not establish an estoppel because the plaintiff's attorney was charged with knowledge of the law, including a statute of limitations, are not on point because the applicable limitations period here was contractual rather than statutory.[6] In light of triable issues of fact as to the existence of an equitable estoppel, Inscorp has not shown that it is entitled to judgment in its favor as a matter of law based on the contractual limitations defense.[7]

3. Inscorp Is Not Entitled to Summary Judgment Based on Other Grounds Asserted in the Motion

a. Scope of Coverage Under the Insuring Clause

Inscorp argued in its summary judgment motion that there was no coverage for the claim under the terms of the policy and that it therefore could not be liable for breach of contract or breach of the implied covenant. It argued that there was no coverage under the insuring clause in the Cargo Coverage Form because there was no court judgment holding Superior liable to a third party for damages, citing Certain Underwriters at Lloyd's of London v. Superior Court (2001) 24 Cal.4th 945 [103 Cal.Rptr.2d 672, 16 P.3d 94] (Powerine I) and San Diego Housing Com. v. Industrial Indemnity Co. (1998) 68 Cal.App.4th 526 [80 Cal.Rptr.2d 393] (San Diego Housing).
Powerine I held that "the insurer's duty to indemnify the insured for `all sums that the insured becomes legally obligated to pay as damages' under the standard comprehensive general liability insurance policy is limited to money ordered by a court." (Powerine I, supra, 24 Cal.4th at p. 960.) Similarly, San Diego Housing held that the insured did not "`become legally obligated to pay as damages'" repair costs paid to its tenants, within the meaning of a comprehensive general liability insurance policy, because there was no court *30 order or judgment against the insured. (San Diego Housing, supra, 68 Cal.App.4th at pp. 539, 543-544, italics omitted; see also County of San Diego v. Ace Property & Casualty Ins. Co. (2005) 37 Cal.4th 406, 420 [33 Cal.Rptr.3d 583, 118 P.3d 607]; Aerojet-General Corp. v. Commercial Union Ins. Co. (2007) 155 Cal.App.4th 132, 143 [65 Cal.Rptr.3d 803].)
These authorities are not on point because the duty to indemnify under the Cargo Coverage Form was not limited to amounts that Superior became "legally obligated to pay as damages." Instead, the coverage extended to "the legal liability of the Insured as a common or contract carrier under tariff documents, bills or [sic] lading or shipping receipts issued by the Insured, for direct loss or damage . . . ." Superior alleges in its complaint that it is contractually liable to Matson for damage to the cargo, and Inscorp has not attempted to show and has not shown otherwise. Inscorp therefore has not shown an absence of coverage on this basis.
Inscorp also argued in its summary judgment motion that there was no coverage under the insuring clause because the dump truck was not "containerized freight" as that term was used in the policy. This coverage issue presents a question of contract interpretation.
(6) "We interpret an insurance policy using the same rules of interpretation applicable to other contracts. (Palmer v. Truck Ins. Exchange (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568].) The mutual intention of the contracting parties at the time the contract was formed governs interpretation. (Civ. Code, § 1636; Palmer, supra, at p. 1115.) We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. (Civ. Code, §§ 1639, 1647.) We consider the contract as a whole and interpret its language in context, rather than interpret a provision in isolation. (Id., § 1641.) We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. (Id., § 1644.) If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs. (Id., § 1638.)
(7) "Policy language is ambiguous if it is susceptible of more than one reasonable interpretation in the context of the policy as a whole. (MacKinnon v. Truck Ins. Exchange (2003) 31 Cal.4th 635, 648 [3 Cal.Rptr.3d 228, 73 P.3d 1205].) . . . Whether policy language is ambiguous is a question of law that we determine de novo. (Producers Dairy Delivery Co. v. Sentry Ins. Co. (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920]; American Alternative Ins. [Corp. v. Superior Court (2006) 135 Cal.App.4th 1239,] 1245 [37 Cal.Rptr.3d 918].)
*31 "Any ambiguity in policy language must be resolved in a manner consistent with the objectively reasonable expectations of the insured in light of the nature and kind of risks covered by the policy. (Foster-Gardner, Inc. v. National Union Fire Ins. Co. (1998) 18 Cal.4th 857, 869 [77 Cal.Rptr.2d 107, 959 P.2d 265].) Accordingly, an insuring clause is interpreted broadly, and an exclusion from coverage otherwise within the scope of an insuring clause must be clear and unmistakable to be given effect. (MacKinnon v. Truck Ins. Exchange, supra, 31 Cal.4th at p. 648; AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) `"The exclusionary clause `must be conspicuous, plain and clear.'" [Citation.]' (MacKinnon, supra, at p. 648, italics omitted.) The interpretation of a contract, including the resolution of any ambiguity, is solely a judicial function, unless the interpretation turns on the credibility of extrinsic evidence. (Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)" (GGIS Ins. Services, Inc. v. Superior Court (2008) 168 Cal.App.4th 1493, 1506-1507 [86 Cal.Rptr.3d 515].)
The term "containerized freight" was not defined in the policy. Superior alleges in its complaint that a flat rack trailer is a container and that cargo attached to a flat rack trailer is "containerized freight." Inscorp argued in its summary judgment motion that the dump truck was not "containerized freight" because it was carried on a flat rack trailer rather than in a closed container, but presented no evidence to counter the factual allegations to the contrary in the complaint. Superior presented evidence in opposition to the motion supporting the allegations in its complaint, including deposition testimony by its president, Ceasar Melgar, and a report by an engineer who inspected Superior's operations in September 2002 on behalf of Inscorp stating that the commodities hauled were "100% container freight." We conclude that Inscorp failed to satisfy its initial burden as moving party to show that coverage could not be established on this basis, and that Superior presented evidence establishing a triable issue of material fact concerning the meaning of the term "containerized freight" in the industry in any event.

b. "Autos" Exclusions

Inscorp also argued that the exclusion for "Autos" in the Cargo Coverage Form precluded coverage for Superior's liability arising from damage to the dump truck because a dump truck fit within definitions of "`autos'" found elsewhere in the policy and did not fit within definitions of "`mobile equipment'" found elsewhere in the policy.
The Truckers Coverage Form provided liability coverage relating to Superior's ownership, maintenance, or use of "`autos,'" as that term was defined in the coverage form, and provided property damage coverage for *32 designated "`autos.'" The Commercial General Liability Coverage Form provided coverage for liability relating to "`bodily injury'" and "`property damage,'" but excluded liability arising from the use of any "`auto,'" as that term was defined in the coverage form, owned or used by Superior. The Cargo Coverage Form provided coverage for liability relating to loss of or damage to cargo in transit, but excluded coverage for "Autos." The All Risk Endorsement modifying the Cargo Coverage Form also excluded coverage for "Autos."
Thus, the policy did not completely exclude "Autos" or "`autos'" from coverage, but limited coverage for "`autos'" to that provided under the Truckers Coverage Form. The apparent purpose of the noted exclusions was to avoid duplicative or inconsistent coverage for the same risk under multiple coverage forms. Absent a more explicit indication to the contrary, Superior reasonably could interpret the exclusion of "Autos" under the Cargo Coverage Form and the All Risk Endorsement not as a restriction on the types of cargo for which liability coverage was provided, but as a restriction on liability coverage relating to Superior's ownership, maintenance, or use of "`autos'" to that provided under the Truckers Coverage Form. Accordingly, we conclude that the "Autos" exclusions do not preclude coverage for the claim. Our conclusion rests not on the policy definition, or lack of definition, of the term "`autos'" or "Autos," but on the reasonable expectations of the insured in light of the nature and kind of risks covered by the policy.

c. Misrepresentations and Concealments in the Application

(8) Inscorp also argued that the policy was invalid because of misrepresentations and concealments made by RSI, on behalf of Superior, in the insurance application. A misrepresentation or concealment of a material fact in connection with an application for insurance is grounds for rescission of the insurance contract. (Ins. Code, §§ 331, 332, 359, 361; LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co. (2007) 156 Cal.App.4th 1259, 1266-1267 [67 Cal.Rptr.3d 917].) Such a misrepresentation or concealment also can provide a defense in an action by the insured on the contract. (Resure, Inc. v. Superior Court (1996) 42 Cal.App.4th 156, 161-163 [49 Cal.Rptr.2d 354].) The defense is in the nature of fraud in the inducement, and is an affirmative defense that must be pleaded in the answer. (See ibid.; 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading § 1090, p. 521; Weil et al., Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) ¶ 10:18.6, p. 10-5 (rev. # 1, 2009).) Inscorp did not allege such an affirmative defense in its answer.
The pleadings determine the scope of relevant issues on a summary judgment motion. (Metromedia, Inc. v. City of San Diego (1980) 26 Cal.3d *33 848, 885 [164 Cal.Rptr. 510, 610 P.2d 407], revd. on other grounds (1981) 453 U.S. 490 [69 L.Ed.2d 800, 101 S.Ct. 2882]; FPI Development, Inc. v. Nakashima (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508].) "`The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues: the function of the affidavits or declarations is to disclose whether there is any triable issue of fact within the issues delimited by the pleadings.' [Citations.]" (FPI Development, supra, at p. 381.) Absent a request for leave to amend, the court cannot consider issues not raised by the pleadings. (Metromedia, supra, at p. 885; Bostrom v. County of San Bernardino (1995) 35 Cal.App.4th 1654, 1663-1664 [42 Cal.Rptr.2d 669].) We cannot affirm a summary judgment based on a matter that is not alleged in the pleadings. (Metromedia, supra, at p. 885.)

d. Other Grounds Asserted for Summary Judgment

Inscorp asserted other grounds for summary judgment addressing only the counts for breach of the implied covenant and unfair competition. We need not address those grounds because none of them would completely dispose of this action, in light of our conclusions above.

4. The Sustaining of the Demurrer to the Fraud Count Was Error

Superior alleges in its sixth count that it "is seeking relief against both INSCORP and RSI under theories of promissory fraud, fraud/deceit, constructive fraud, intentional misrepresentation of fact, concealment or suppression of fact, [and] fraud under Civil Code § 1572 . . . ." Superior alleges that Inscorp "falsely advertised" that it was "suitable to insure the business that Plaintiff was engaged in" and concealed its lack of familiarity with the drayage business. Superior's argument on appeal, however, is limited to fraudulent concealment.
(9) The elements of a cause of action for fraudulent concealment are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. [Citation.]" (Marketing West, Inc. v. Sanyo Fisher (USA) Corp. (1992) 6 Cal.App.4th 603, 612-613 [7 Cal.Rptr.2d 859].) The facts supporting a fraud count must be alleged with particularity. (Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 216-217 [197 Cal.Rptr. 783, 673 P.2d 660].)
*34 (10) In our view, Superior adequately alleges a count for fraudulent concealment. An insurer has a duty to disclose to its prospective insured facts that it knows or believes to be material to the contract and that are unascertainable by the insured. (Ins. Code, §§ 332, 361; Pastoria v. Nationwide Ins. (2003) 112 Cal.App.4th 1490, 1496, 1498 [6 Cal.Rptr.3d 148].) Superior alleges that Inscorp concealed its lack of familiarity with the drayage business and wrongfully denied the claim based in part on its alleged misunderstanding of the business and of the term "containerized freight" as used in that business. Superior alleges further that Inscorp willfully deceived Superior with the intention of causing it to enter into the insurance contract, that Superior was unaware of the true facts and those facts were not reasonably discoverable by Superior, and that Superior suffered damages as a result. These allegations are sufficient for pleading purposes to allege the intentional concealment of a material fact, a duty to disclose that fact, the intent to induce reliance, Superior's justifiable reliance, and resulting damages. The sustaining of the demurrer to the fraud count was error.

5. The Striking of the Punitive Damages Allegations Was Error

(11) A plaintiff may recover punitive damages for breach of an obligation not arising from a contract if the trier of fact finds by clear and convincing evidence that the defendant was guilty of oppression, fraud, or malice. (Civ. Code, § 3294, subd. (a).) "`Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (Id., subd. (c)(2).) "`Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." (Id., subd. (c)(3).) "`Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Id., subd. (c)(1).)
The facts alleged in the complaint adequately describe a conscious disregard for Superior's rights in connection with the making of the policy and the investigation and denial of its claim, from which the jury could infer "oppression." (Taylor v. Superior Court (1979) 24 Cal.3d 890, 894 [157 Cal.Rptr. 693, 598 P.2d 854]; Perkins v. Superior Court (1981) 117 Cal.App.3d 1, 6-7 [172 Cal.Rptr. 427].) We express no opinion on Superior's ability to prove these allegations, because that question is not before us. The striking of the punitive damages allegations was error.

*35 DISPOSITION

The judgment is reversed with directions to (1) vacate the order granting the summary judgment motion and enter a new order denying the motion; and (2) vacate the order sustaining the demurrer to the fraud count and striking the punitive damages allegations, and enter a new order overruling the demurrer and denying the motion to strike. Superior is entitled to recover its costs on appeal.
Klein, P. J., and Kitching, J., concurred.
NOTES
[1] All further section references are to California Code of Regulations, title 10, unless otherwise indicated.
[2] An endorsement stated that the term "policy" as used in the Cargo Coverage Form was changed to "Coverage Part." The endorsement also stated that the Common Policy Conditions applied to the Cargo Coverage Form, provided that they did not conflict with the coverage form.
[3] The Cargo Coverage Form stated under the heading "EXCLUSIONS," "This policy does not cover:" and listed several items, including "Autos."
[4] The contractual limitations provision in the Cargo Coverage Form stated: "No suit action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State."
[5] We take judicial notice of the initial statement of reasons, dated November 16, 1995, contained in the Department of Insurance's rulemaking file No. RH-344, relating to revisions adopted in January 2007. Our review of that file and of rulemaking file No. RH-297, relating to regulations adopted in December 1992, including section 2695.4, subdivision (a), has disclosed no other noteworthy information concerning the intended interplay of the two regulations.
[6] Tubbs v. Southern Cal. Rapid Transit Dist. (1967) 67 Cal.2d 671, 679 [63 Cal.Rptr. 377, 433 P.2d 169], Jordan v. City of Sacramento (2007) 148 Cal.App.4th 1487, 1497 [56 Cal.Rptr.3d 641], Romero v. County of Santa Clara (1970) 3 Cal.App.3d 700, 705 [83 Cal.Rptr. 758], and Kunstman v. Mirizzi (1965) 234 Cal.App.2d 753, 757 [44 Cal.Rptr. 707], are distinguishable on this basis.
[7] Superior's second and third contentions are moot in light of our conclusion.