[No. B215274. Second Dist., Div. Four. Aug. 27, 2010.]

COLONY INSURANCE COMPANY, Plaintiff and Appellant, v.
CRUSADER INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Murchison & Cumming and Bryan M. Weiss for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez; Robie & Matthai, James R. Robie and David J. Weinman for Defendant and Respondent.

OPINION

**MANELLA, J.**—Both Colony Insurance Company (Colony) and Crusader Insurance Company (Crusader) insured a building in Los Angeles, which became the subject of a tenant lawsuit. In this case, Colony sought a declaration that Crusader improperly refused to defend the tenant lawsuit. Colony further sought an equitable share of defense costs incurred in defending the tenant litigation. In this appeal, Colony argues that Crusader failed to investigate public records as required by Crusader's internal underwriting guidelines. As a result, according to Colony, Crusader waived the right to challenge misrepresentations made by its insured and was estopped from denying a defense in the tenant lawsuit based on the insured's misrepresentations. Colony forfeited this argument by failing to raise it until after trial in its objections to the trial court's statement of decision. Moreover, the argument fails on the merits, as Crusader's internal guidelines, standing alone, created no enforceable rights on Colony's part. Colony also argues but fails to show that Crusader engaged in improper postclaims underwriting. We affirm the judgment in favor of Crusader.

## FACTUAL AND PROCEDURAL BACKGROUND

Rao Yalamanchili is the president of Positive Investments, Inc., which controlled 721 Westlake Avenue, LLP. From December 2001 through July 2005, 721 Westlake Avenue, LLP, owned an apartment building located at 721 Westlake Avenue, in the City of Los Angeles (the Building). From December 17, 2003, to December 17, 2004, Crusader insured the Building. After that, Colony insured the Building.

### 1. *Inspections of the Building*

On February 25, 2002, a code enforcement unit of the City of Los Angeles's housing department issued a two-day order to repair "critical habitability violations" at the Building. The deficiencies included the failure to provide a sufficient hot water supply to the kitchen and bathroom fixtures. On April 30, 2002, an inspector from the City of Los Angeles's code enforcement division issued a "Notice to Comply." It cited the Building for

trash outside the bathroom window of one unit, torn window screens, and rodents. The same report noted deficiencies in the cleanliness and in the floors and stairways. On September 5, 2002, the City of Los Angeles code enforcement division issued another "Notice to Comply." The inspector documented trash outside a bathroom, a broken window, damaged bathroom walls and ceiling, and a faulty kitchen faucet in unit 206 of the Building. The inspector also documented the hazard of a storage area in the boiler room.

### 2. *Yalamanchili's Application for Insurance*

In November 2003, Yalamanchili caused an application and supplemental application for insurance on the Building to be sent to Crusader. In the supplemental application, signed by Yalamanchili on November 18, 2003, and in response to a question regarding whether a governmental department had inspected the Building, Yalamanchili answered that the Building had been inspected in 1999 and 2000. Yalamanchili did not mention any inspections after 2000. In response to a question whether a governmental department had ever notified him of deficiencies or code violations, Yalamanchili answered negatively. In response to questions regarding whether the Building had been cited for code violations or cited by a regulatory body within the last three years, Yalamanchili answered, "No."[1]

### 3. *Crusader's Insurance Policy*

On December 17, 2003, Crusader issued a special multiperil liability policy that, among other things, insured claims by tenants of substandard or uninhabitable living conditions. The policy states: "By acceptance of this policy, the insured agrees that the statements in the policy declarations and the application for insurance are the agreements and representations of the insured, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the insured and the company or any of its agents relating to this insurance." At the time it issued the policy, Crusader had no knowledge of the insured's omissions of material information in the application and supplemental application.

### 4. *Underlying Litigation Against Positive Investments*

In November 2005, Positive Investments was sued by tenants at the Building in a lawsuit captioned *Mendoza v. Positive Investments, Inc.* (Super. Ct. L.A. County, 2008, No. BC343415) (*Mendoza*). Crusader agreed to defend the action under a reservation of rights. On June 1, 2006, the

---

[1] Yalamanchili denied signing the applications bearing his name and signature, but the trial court found his denial "wholly unbelievable." That finding is not challenged on appeal.

tenant-plaintiffs amended their complaint and attached the above described citations dated February 25, 2002, April 30, 2002, and September 5, 2002. This was the first time Crusader learned of these citations.

On October 6, 2006, Crusader denied coverage for the claim arising from the tenants' lawsuit. Crusader's stated basis for denial was material "misrepresentations and/or concealments" in the insurance application.

### 5. *Colony's Lawsuit Against Crusader*

On May 10, 2007, Colony sued Crusader for declaratory relief and equitable contribution. In its complaint, Colony sought a declaration that the misrepresentations or concealments in the application were not material. In its equitable contribution cause of action, Colony sought payment from Crusader for a portion of the defense costs in the underlying litigation.

In a bench trial, Colony sought to establish that the challenged misrepresentations were made in response to questions that were vague and ambiguous. Colony also claimed that the information omitted from the application and supplemental application was not material.

Yalamanchili testified that he understood the insurance company was entitled to rely on the accuracy of the information provided in his application for insurance. Yalamanchili and his broker conceded that the 2002 citations should have been included in the application. Yalamanchili admitted that the underlying litigation concerned the very citations that had not been disclosed in the insurance application. Both Yalamanchili and his insurance broker disputed the meaning of the term "violation" and sought to distinguish a violation from a recommendation by the city. Colony's expert, Frank Raab, testified that the violations were not material.

Mark Neiman, president of Unifax, which underwrote Crusader's insurance policies, testified that Crusader had special guidelines for apartment buildings over 24 units and 40 years old, including the Building. Those internal guidelines (Guidelines) required that "[f]or all new and renewal quotes, the regional manager, the general manager, or the underwriting manager must attempt to verify, by accessing public records, the existence or lack of any citation issued against the subject building." The Guidelines further provided that "[i]f you need assistance in verifying public records, you must pass the file on to the general manager or the underwriting manager. This verification is necessary despite the manner in which the application form is answered."

Neiman testified that he attempted to comply with the Guidelines by accessing a Web site called, "Neighborhood Knowledge Los Angeles."

According to Neiman, "Neighborhood Knowledge Los Angeles" identified inspections conducted by the City of Los Angeles. However, Neiman acknowledged that at the time he checked the Web site, he was unaware of the ability to click on links from the Web site to access additional information. Additionally, the Web site was current only through June 30, 2002, and listed inspections only through January 2000. Neiman testified if the three 2002 citations had been revealed, he would not have approved the risk of insuring the Building.

Defense witnesses testified that none of the documented violations were minor.

### 6. Court Findings

A detailed statement of decision contained the following findings among others. Yalamanchili failed to provide information "clearly and unambiguously called for in the Crusader Supplemental Application and Application," specifically, the notices issued in February, April, and September of 2002. Crusader reasonably relied on Yalamanchili's statements in the application denying the issuance of any notices of deficiencies in the Building. Crusader would not have insured the Building if it had known of the 2002 notices.

After trial, Colony filed objections to the court's proposed statement of decision. Colony argued that Crusader had waived its right to deny coverage or was estopped from denying coverage, based on its alleged failure to follow its own internal Guidelines in investigating the statements made in Yalamanchili's application.[2] In response, Crusader noted that Colony's objections were "based on contentions which were not advanced in Colony's trial brief, or at trial" and argued that the statement of decision "need not be modified based on anything in Colony's objections."

The court entered judgment in favor of Crusader.[3] Colony timely appealed from the judgment.

## DISCUSSION

■ Statutes governing the relationship between an insurer and its insured require that "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty,

---

[2] Colony did not distinguish between principles of waiver and estoppel, but characterized its waiver/estoppel argument as a single issue.

[3] Our record does not include the court's reasons for rejecting Colony's objection to the statement of decision.

and which the other has not the means of ascertaining." (Ins. Code, § 332.) "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." (Ins. Code, § 334.)

"Neglect to communicate that which a party knows, and ought to communicate, is concealment." (Ins. Code, § 330.) "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." (Ins. Code, § 331.) "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." (Ins. Code, § 359.) Other remedies also are available where an insured has misrepresented or concealed material facts. (*Resure, Inc. v. Superior Court* (1996) 42 Cal.App.4th 156, 161 [49 Cal.Rptr.2d 354].)

### 1. *No Waiver or Estoppel Based on Crusader's Internal Guidelines*

In its leading argument on appeal, Colony relies on principles of equitable estoppel and waiver to argue that Crusader was precluded from denying coverage for the underlying litigation. As we explain, Colony forfeited its argument by failing to timely raise it in the trial court. Additionally, we find it lacks merit.

#### a. *Forfeiture*

In its complaint, Colony failed to plead either waiver or estoppel. Nor did it base its theory of liability at trial on Crusader's waiver of any known right or argue that Crusader was estopped to deny Colony coverage. Rather, it argued that the questions in the application were ambiguous, and that the information omitted was not material to Crusader's decision to insure the Building. Nonetheless, on appeal Colony argues that it was sufficient to raise its waiver/estoppel theory in its posttrial objections to the trial court's statement of decision. We disagree.

Code of Civil Procedure section 632 (section 632) governs statements of decision. Under section 632, a "request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision." If a statement of decision fails to resolve a controverted issue, the parties identify that issue in objections to the statement of decision. (Code Civ. Proc., § 634.) A statement of decision, however, covers only issues litigated in the case. (*Crews v. Johnson* (1962) 202 Cal.App.2d 256, 259 [21 Cal.Rptr. 37] [court properly made no finding on issue neither raised in any pleading nor at issue in case]; see also *Adoption of*

*Matthew B.* (1991) 232 Cal.App.3d 1239, 1259 [284 Cal.Rptr. 18] [court's failure to address issue in statement of decision explained by party's failure to raise it].)

Colony's objection to the statement of decision for failing to resolve the issue of estoppel or waiver identified no cognizable error. Instead, under the guise of an objection to the court's failure to resolve a controverted issue, Colony sought to raise a new argument. Because the argument was not litigated at trial, however, the trial court was under no obligation to address it.

■ Nor are we. "It is a firmly entrenched principle of appellate practice that litigants must adhere to the theory on which a case was tried." (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [88 Cal.Rptr.2d 758].) Moreover, while a court may, in the exercise of its discretion, consider a new theory on appeal when it is purely a matter of applying the law to undisputed facts, Colony's contention that the facts below are undisputed is contradicted by the record. Crusader vigorously disputed that it failed to follow its Guidelines, and Neiman testified that he did. Finally, we note that in order to raise a claim of estoppel, Colony was required to plead it. (*LaRue v. Swoap* (1975) 51 Cal.App.3d 543, 551 [124 Cal.Rptr. 329] ["The burden of pleading facts which raise the issue of estoppel lies with the party who would estop the other party [citation], and for estoppel to be available it must be specially pleaded."].) Because Colony failed to raise the issue of waiver/estoppel until its posttrial objections to the statement of decision, it forfeited the argument.

Notwithstanding Colony's forfeiture, we consider its arguments on the merits. For purposes of this discussion only, we assume that Crusader failed to follow the Guidelines requiring an investigation of public records for a "big and old" building. As we explain, even with this assumption, Colony fails to show Crusader was estopped or waived its right to rely on Yalamanchili's representations in the insurance application.

b. *No Estoppel*

■ Generally " 'four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' " (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (1992) 10 Cal.App.4th 988, 997 [12 Cal.Rptr.2d 848].) For example, where facts are imputed to an insurer, the insurer may be estopped from denying them. (*O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 288 [30 Cal.Rptr.3d 507, 114 P.3d

753].) Or, where an insurer has actual knowledge that answers in an application were false, the insurer may be estopped from arguing it was defrauded. (*Anaheim Bldrs. Supply, Inc. v. Lincoln Nat. Life Ins. Co.* (1965) 233 Cal.App.2d 400, 411 [43 Cal.Rptr. 494].)

■ Here, there was no evidence that Crusader had actual knowledge, imputed knowledge, or inquiry knowledge of the three 2002 citations. To the contrary, the court expressly found Crusader first learned of the citations when it received the first amended complaint in the *Mendoza* litigation. Accordingly, Colony cannot establish the first element of estoppel.

Recognizing that Crusader was not apprised of the citations, Colony argues that Crusader was apprised of its own Guidelines requiring investigation. This is true but irrelevant. Colony cites no authority for the proposition that Crusader's internal Guidelines, standing alone, created any rights enforceable by Colony. Not only does Colony fail to demonstrate that Crusader intended its internal Guidelines to be acted upon, but the insurance agreement demonstrated the opposite: "By acceptance of this policy, the insured agrees . . . that this policy embodies all agreements existing between the insured and the company or any of its agents relating to this insurance." Moreover, Colony fails to identify any evidence establishing that Yalamanchili in fact detrimentally relied on the Guidelines. In short, Colony's attempt to rely on Crusader's alleged noncompliance with its own Guidelines, even if credited, fails.

Colony's reliance on *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260 [84 Cal.Rptr.2d 552] is misplaced. There, the court held that "an insurer's direct violation of duly promulgated administrative regulations issued by the California Insurance Commissioner, requiring the insurer to notify a claimant insured of time limits pertaining to the claim, may provide the basis of an estoppel against the insurer's assertion of a contract limitations defense." (*Id.* at p. 1263.) The administrative regulations triggered a duty on the part of the insurer to warn the insured of the statute of limitations. Because the insurer did not comply with its obligation, the insured raised a triable issue of material fact as to whether the insurer was estopped from asserting the statute of limitations as a defense. (*Id.* at p. 1267.) Here, Crusader was under no similar duty. Unlike the administrative regulations involved in *Spray*, Crusader's Guidelines created no legal obligation. In addition, in contrast to the failure of the insurer in *Spray* to inform the insured of the statute of limitations, here Crusader informed the insured of the consequence of misrepresentations in the application, specifically stating that "[m]isrepresentations on the application may void all insurance." *Spray* thus supplies no support for Colony's argument that Crusader was estopped from relying on Yalamanchili's misrepresentations.

### c. *No Waiver*

Colony argues that Crusader waived its right to deny coverage based on Yalamanchili's misrepresentations because it failed to follow its Guidelines. The record fails to support this argument.

#### i. *Crusader Did Not Intentionally Relinquish a Known Right*

■ Generally, in the insurance context, waiver requires the intentional relinquishment of a known right. (See, e.g., *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 156 Cal.App.4th 1259, 1270 [67 Cal.Rptr.3d 917] [in context of rescission of insurance police, " ' "[w]aiver is the intentional relinquishment of a known right" ' "]; *Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 476 [25 Cal.Rptr.3d 627] [same]; *Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 824 [44 Cal.Rptr.2d 56] [same].) Waiver may also apply where a party acts in a manner inconsistent with the intent to enforce a right. As our Supreme Court explained in *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 33, 34 [44 Cal.Rptr.2d 370, 900 P.2d 619], "[I]n the insurance context the terms 'waiver' and 'estoppel' are sometimes used interchangeably, even though estoppel requires proof of the insured's detrimental reliance. [Citation.] . . . 'California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' "

Here, there was no evidence Crusader intentionally relinquished a known right. The court found that Crusader did not learn of the citations until it received the first amended complaint in the *Mendoza* litigation, and it denied the claim shortly thereafter. Nor was there evidence Crusader's conduct was inconsistent with an intent to enforce a right. Indeed, Colony does not argue otherwise.

#### ii. *Internal Underwriting Guidelines Do Not Result in Waiver*

■ Insurance Code section 336 provides: "The right to information of material facts may be waived, either (a) by the terms of insurance or (b) by neglect to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated." An insurer waives information about a material fact where it neglects to make inquiry about material facts distinctly implied from other facts that had been revealed. (*Turner v. Redwood Mutual Life Assn.* (1936) 13 Cal.App.2d 573, 578 [57 P.2d 222] [finding waiver where insured disclosed illness and name of treating physician].) Waiver applies where an insurer has actual knowledge that facts presented in an application were untrue. (*DiPasqua v. California etc. Life Ins.*

*Co.* (1951) 106 Cal.App.2d 281, 284–285 [235 Cal.Rptr. P.2d 64] [insurer cannot rely on insured's answers when insurer's investigation revealed falsity of those answers]; *Rutherford v. Prudential Ins. Co.* (1965) 234 Cal.App.2d 719, 735 [44 Cal.Rptr. 697] [where insurer had information indicating responses were untrue before it issued the policy, insurer waived right to additional information by failing to investigate].)

Here, no facts in Yalamanchili's application alerted Crusader—either expressly or impliedly—to the February, April, or September 2002 citations. Nor was there any evidence in the record that Crusader had information that Yalamanchili's answers were untrue prior to issuing the insurance. The court found "Crusader issued the policy on 721 Westlake without any knowledge of these inspections, orders and notices, and unaware of the insureds' omissions of material information in the Application and Supplemental Application." It follows that Crusader did not waive the right to information of material facts by neglecting to make inquiry. (*Cohen v. Penn Mut. Life Ins. Co.* (1957) 48 Cal.2d 720, 729 [312 P.2d 241] [no waiver where insured denied any medical history bearing on specific questions asked]; *West Coast Life Ins. Co. v. Ward* (2005) 132 Cal.App.4th 181, 192 [33 Cal.Rptr.3d 319] [waiver only where facts " 'distinctly implied' " by information communicated to insurer, and insurer fails to make inquiry].)

Colony provides no legal support for its contention that Crusader waived its right to assert Yalamanchili's misrepresentations or concealments because of Crusader's alleged failure to follow its Guidelines. (Cf. *Lunardi v. Great-West Life Assurance Co., supra,* 37 Cal.App.4th at p. 822, fn. 9 ["An insured who withholds information and then blames the insurer for not discovering it is at best exhibiting gamesmanship."].) Nor does Colony explain how Crusader's internal Guidelines could rewrite the California statutes expressly permitting an insurer to rely on an insured's representations. (See Ins. Code, § 331; see also *Robinson v. Occidental Life Ins. Co.* (1955) 131 Cal.App.2d 581, 585 [281 P.2d 39] [insured has duty to divulge fully; insurer is not required to assume falsity of statements made to insurer's examiner].) Further, Colony presents no evidence showing that a more thorough investigation would have led Crusader to discover the 2002 citations. (Cf. *Cal.-West. States etc. Co. v. Feinsten* (1940) 15 Cal.2d 413, 422 [101 P.2d 696] ["Nor may it be said that the insurer could have waived its right to rescind, on the ground of false representations made by the insured . . . until the insurer had become aware of the falsity of those

representations."].) Thus, even assuming Crusader failed to follow its Guidelines, Colony does not establish that Crusader waived its right to rely on Yalamanchili's statements in the application.[4]

### 2. *No Showing of Improper Postclaims Underwriting*

Relying on *Hailey v. California Physicians' Service* (2007) 158 Cal.App.4th 452 [69 Cal.Rptr.3d 789] (*Hailey*) and *Barrera v. State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674] (*Barrera*), Colony argues that Crusader improperly engaged in postclaims underwriting. This practice has been prohibited in the context of health insurers. Specifically, Health and Safety Code section 1389.3 (section 1389.3) provides: "No health care service plan shall engage in the practice of postclaims underwriting. For purposes of this section, 'postclaims underwriting' means the rescinding, canceling, or limiting of a plan contract due to the plan's failure to complete medical underwriting and resolve all reasonable questions arising from written information submitted on or with an application before issuing the plan contract. This section shall not limit a plan's remedies upon a showing of willful misrepresentation."

In *Hailey*, the court applied section 1389.3, finding that the statute "precludes a health services plan from rescinding a contract for a material misrepresentation or omission unless the plan can demonstrate (1) the misrepresentation or omission was willful, or (2) it had made reasonable efforts to ensure the subscriber's application was accurate and complete as part of the precontract underwriting process." (*Hailey, supra,* 158 Cal.App.4th at p. 459.) Colony's reliance on *Hailey* is misplaced because *Hailey* applied a specific statute applicable to health services plans. This case does not involve

---

[4] Colony's reliance on *Philadelphia Indemnity Ins. Co. v. Horowitz, Greener & Stengel, LLP* (S.D.N.Y. 2005) 379 F.Supp.2d 442, is misplaced. There, the New York district court held that an insurer could not show that its insured made a material misrepresentation where the insured answered the questions honestly but failed to complete a supplemental application form. (*Id.* at p. 453.) In contrast, Yalamanchili provided no answers requiring elaboration. He falsely stated that no citations had been issued. Thus, unlike the insured in *Philadelphia Indemnity,* Yalamanchili did not simply provide an application with blanks but affirmatively provided false information.

In its reply brief, Colony relies on *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195, footnote 4 [8 Cal.Rptr.3d 517, 82 P.3d 727], for the proposition that waiver may refer "to the loss of a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right." Colony fails to show that authority governing the right to compel a contractual right to arbitration is applicable here.

Colony also requests this court analogize the Guidelines to the Good Samaritan rule, which imposes liability where, among other things, a person specifically undertakes to perform a task and performs it negligently. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612–614 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) Here, Crusader did not voluntarily assume a duty vis-à-vis Yalamanchili or Colony. Instead, it provided Guidelines to its own underwriters.

a health services plan and the prohibition on postclaims underwriting in section 1389.3 is inapplicable.

*Barrera* is similarly inapposite. There, our Supreme Court held: "[A]n automobile liability insurer must undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance of a policy. This duty directly inures to the benefit of third persons injured by the insured. Such an injured party, who has obtained an unsatisfied judgment against the insured, may properly proceed against the insurer; the insurer cannot then successfully defend upon the ground of its own failure reasonably to investigate the application." (*Barrera, supra*, 71 Cal.2d at p. 663.) The *Barrera* court remanded the case for retrial to determine whether the insurer reasonably investigated the insured's insurability. (*Ibid.*)

*Barrera* was based on "public policy considerations [that] warrant[ed] an important qualification on an insurer's right to rescind in the context of automobile liability insurance." (*Philadelphia Indemnity Ins. Co. v. Montes-Harris* (2006) 40 Cal.4th 151, 157 [51 Cal.Rptr.3d 709, 146 P.3d 1251].) As clarified in *Philadelphia Indemnity Ins. Co.*, *Barrera* prevents an insurance company from defeating recovery by an injured person who obtained a judgment from the insured. (*Philadelphia Indemnity Ins. Co.*, at pp. 159–160.) It does not, however, preclude the insurer from relying on misrepresentations by the insured. The insurer "retains a right to either prosecute a cause of action against the insured for damages for the latter's misrepresentations, or rely on the misrepresentations as a defense in any action by the insured." (*Id.* at p. 160.)

Unlike *Barrera*, this case does not involve an automobile liability insurer or the public policy of protecting injured third parties. (*Fireman's Fund Ins. Co. v. Superior Court* (1977) 75 Cal.App.3d 627, 633 [142 Cal.Rptr. 249] [*Barrera* has been "limited to automobile liability insurers who deny coverage for reasons arising out of their own negligence."]; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 85, fn. 6 [103 Cal.Rptr.3d 906] [distinguishing *Barrera* on ground *Barrera* was based on overriding public policy of protecting injured third parties].) In contrast to the public policy involved in *Barrera*, here the relevant law requires an applicant for insurance to disclose material facts and permits rescission and other remedies absent such disclosure. (Ins. Code, §§ 331, 359; *Resure, Inc. v. Superior Court, supra*, 42 Cal.App.4th at p. 161.) In short, Colony has not shown Crusader improperly engaged in postclaims underwriting.

## DISPOSITION

The judgment is affirmed. Respondent shall have its costs on appeal.

Epstein, P. J., and Willhite, J., concurred.