Filed 2/26/21  Philadelphia Indemnity Ins. Co. v. Housing Authority etc. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>HOUSING AUTHORITY OF THE COUNTY OF ALAMEDA,<br><br>    Defendant and Respondent. | A157691<br><br>(San Francisco County Super. Ct. No. CGC-16-555946) |

This appeal is about the enforceability of a construction performance bond for a public works contract.

The Housing Authority of the County of Alameda (HACA) entered into a construction agreement with a contractor for a rehabilitation project known as the Emery Glen Project.  The contractor, known to HACA from prior business dealings, did business under the names "World Priority, LLC," "World Priority," and "World Priority Construction."  HACA's construction agreement for the Emery Glen Project identified the contractor as "World Priority, LLC."

HACA required a construction performance bond as a condition of entering the agreement.  The contractor submitted a bond issued by Philadelphia Indemnity Insurance Company (PIIC) for the Emery Glen

1

Project (Bond); the Bond identified the principal as "World Priority Construction."[1] HACA accepted the Bond because HACA staff knew the contractor also referred to itself by that name.

Time passed, the contractor failed to complete the Emery Glen Project, and HACA submitted a claim to PIIC on the Bond. But PIIC denied HACA's claim and eventually filed a complaint in superior court seeking a judicial declaration that the Bond had no force or effect and that PIIC had no surety obligations under the Bond to HACA. PIIC alleged it issued the Bond to "World Priority Construction," and "World Priority, LLC," is a different entity, a Wyoming limited liability company that is not licensed in California and was never a PIIC principal. HACA filed a cross-complaint against PIIC for breach of the Bond.

Following a four-day bench trial on liability only, the trial court found in favor of HACA. The trial court found the Bond was valid and enforceable and that PIIC was equitably estopped from denying the validity and enforceability of the Bond. The parties then stipulated to the amount of damages and judgment was entered.

PIIC appeals. Although it attacked the trial court's findings in its opening brief, PIIC concedes in its reply that the court's finding of equitable estoppel withstands a substantial evidence challenge. PIIC is left with a contention it never made during trial or indeed in the 10 months following

---

[1] A performance bond creates a tripartite relationship among the surety (the issuer of the bond), the surety's principal (the contractor, who obtains the bond from the surety), and the owner (also called the "obligee," the party that has hired the contractor). (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 910.) The purpose of the bond is to protect the owner as " ' "the surety agrees to answer for the debt, default, or miscarriage of the principal." ' " (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 38.)

the close of evidence: that it has no obligation to pay under the Bond because the underlying construction agreement between HACA and the contractor for the Emery Glen Project is void under Business and Professions Code section 7028.15, subdivision (e) (§ 7028.15(e)). This statute provides that a bid submitted by an unlicensed contractor to a public agency must be considered nonresponsive and makes void any contract awarded by a public agency to an unlicensed contractor. (§ 7028.15(e)).

PIIC only raised section 7028.15(e) in a motion filed after the court issued its final statement of decision. The trial court denied this posttrial motion as untimely and dismissed the argument as without merit.

PIIC has not shown error, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*HACA's Dealings with the Contractor Known as "World Priority, LLC"*

Ed La Perle presented himself to HACA as the CEO of a construction business he variously referred to as "World Priority, LLC," "World Priority," and "World Priority Construction."[2] Whichever name he used to refer to his business, La Perle always provided HACA the same address in Discovery Bay, California, the same federal tax identification number, and the same license number from the California Contractors State License Board (CSLB). HACA staff checked the contractor's license number La Perle provided and

---

[2] For example, when La Perle attended a walk-through for a project in Union City in October 2012, he signed in for "World Priority." When he submitted a bid for that project, the name on the bid was "World Priority, LLC." Invoices La Perle submitted for that project had a logo with the words "World Priority," a line, then "Construction" below the line, a symbol of a globe under a magnifying glass to the right, and below that "World Priority, LLC." The HACA procurement analyst who prepared that contract (and later prepared the Project agreement) testified she said to La Perle " 'You've got two names on this invoice,' and he said 'It's the same.' "

3

confirmed it belonged to "World Priority." HACA staff also knew the tax identification number La Perle provided was associated with the name "World Priority, LLC." La Perle's business did two small construction projects for HACA before the Emery Glen Project, and in both cases the service contracts identified the contractor as "World Priority, LLC." Based on La Perle's conduct, HACA staff and its Executive Director believed the names "World Priority, LLC," "World Priority," and "World Priority Construction" all referred to one business entity.

In May 2013, HACA published a notice inviting contractors to bid on the Emery Glen Project. La Perle submitted a bid to complete the Emery Glen Project for $411,000 under the name "World Priority." La Perle's bid was determined to be the lowest, and in June HACA issued a notice of award for the Emery Glen Project (Award Notice) to La Perle's business using the name "World Priority, LLC." The procurement analyst who prepared the Award Notice testified she used that name because it was "the legal name the tax ID number was associated with." La Perle subsequently delivered the Bond (that is, the required performance bond issued by PIIC for the Emery Glen Project) to HACA. HACA staff noticed the Bond named the principal "World Priority Construction," not "World Priority, LLC," but they accepted the Bond because they believed the two names referred to the same business.[3] In July 2013, HACA and La Perle executed the construction agreement for the Emery Glen Project (Agreement). The Agreement—which the Bond incorporated by reference ("hereby referred to and made a part

---

[3] The manager of the Project at HACA testified he knew "World Priority," "World Priority Construction," and "World Priority, LLC," all had the same CSLB license number and tax identification number, and he believed "it was all the same thing; one company."

4

thereof")—identified the contractor as "World Priority, LLC," and was signed by La Perle as CEO. La Perle had signed the Bond as CEO of "World Priority Construction."

The contractor did not finish the Emery Glen Project, and in June 2014, HACA terminated the Agreement.

*PIIC's Issuance of a Performance Bond*

La Perle obtained the Bond through Surety Solutions Insurance Services (Surety1), an insurance and surety bond broker and underwriter that specializes in small and emerging contractors. According to Surety1's president, John Page, "World Priority Construction" was its customer. La Perle provided Surety1 the same tax identification number and contractor's license number he used in his dealings with HACA. Page testified his office verified "World Priority Construction" was licensed. In fact, supporting documents in Surety1's files showed that the California contractor's license number La Perle provided was associated with an entity called "World Priority," *not* "World Priority Construction."

Page testified that when his office received a copy of the Award Notice for the Emery Glen Project in the name "World Priority, LLC," this was "the first time we had ever seen that name come to light." But this testimony was contradicted by documents in Surety1's file for La Perle's construction business, which included a balance sheet and banking statements for "World Priority, LLC." La Perle provided these documents as financial information to support his application for a performance bond for the Emery Glen Project, and Page testified his office relied on these documents in deciding to issue the Bond. After receiving the Award Notice and before the Bond was issued, Page mentioned to La Perle at the end of an email (which otherwise concerned a different matter), "We do need the contract name changed." His

5

office then issued the Bond to "World Priority Construction" and gave it to La Perle with the intention that La Perle would use it to execute a construction agreement with HACA for the Emery Glen Project. In response to a question from the trial court, Page testified he was unaware of an entity called "World Priority, LLC," and he did not know whether such an entity had a contractor's license.

*Trial and Statement of Decision*

Pursuant to stipulation, a bifurcated bench trial on liability was held over four days in January 2018. The parties submitted competing proposed statements of decision, and the court filed a tentative statement of decision finding in favor of HACA in June 2018. PIIC filed additional briefing in July and October 2018.[4]

On November 5, 2018, the trial court filed a 22-page final statement of decision finding in favor of HACA.

The trial court found that HACA witnesses "testified credibly," but Page testified "untruthfully" when he said the Award Notice was the first time he had seen the name "World Priority, LLC." The court found that HACA and La Perle's construction business "whether known as World Priority, World Priority Construction or World Priority LLC," evidenced a clear intent to enter a construction agreement for the Emery Glen Project. It found that Page, acting as a broker agent to obtain bonding for La Perle's construction business and as an underwriter for PIIC, intended to act as surety for La Perle's business in connection with the Emery Glen Project.

---

[4] In July, PIIC filed a request for statement of decision asking the court to provide "the factual and legal basis for its decision as to" 72 questions. In October, PIIC filed a supplemental trial brief and a clarification to its supplemental trial brief. (PIIC filed its initial trial brief in January before the trial started.) PIIC never raised section 7028.15 in these filings.

6

The court found no evidence that La Perle "was acting in a dual role for two different companies." Based on the evidence and principles of contract interpretation, the court determined the names "World Priority, LLC" and "World Priority Construction" referred to "the same contractor entity using different names for purposes of" the Agreement and the Bond.

The court further concluded the Bond was valid and PIIC was equitably estopped from denying the validity and enforceability of the Bond.[5] The court determined, "HACA reasonably relied on the Bond to its detriment" and "PIIC is liable to HACA and cannot now evade the obligations it owes to HACA under the Bond."[6]

---

[5] Equitable " '[e]stoppel is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts.' " (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 59 (*DRG*).)

[6] In its discussion of equitable estoppel, the trial court cited *DRG, supra,* and *Busse v. Pacific Employers Ins. Co.* (1974) 43 Cal.App.3d 558 (*Busse*). *Busse* applied equitable estoppel in the surety context and stated the following rule. "Where a surety seeks to avoid liability on the ground that its undertaking was delivered conditionally and the conditions were not performed, the courts ordinarily apply one of two rules, depending on the facts presented: 'When the surety's undertaking is complete and regular on its face and the obligee has no notice of conditions imposed by the surety, the surety will be liable; . . . on the other hand, when the undertaking is so incomplete on its face as to suggest nonperformance of some condition imposed by a surety, it carries notice to the obligee and relieves the surety.' " (Busse, *supra*, 43 Cal.App.3d at pp. 568–569.)

Applying *Busse* to the facts of this case, the trial court found PIIC was seeking to avoid liability on the ground the Bond was conditioned on changing the name in the underlying construction agreement to "World Priority Construction" even though the Award Notice was to "World Priority, LLC." The trial court reasoned, "equitable estoppel should be applied in this case. If the surety's performance bond [was intended to] have no effect unless the name on the . . . construction contract be changed[,] that should have

7

On December 14, 2018, the court set the trial for determination of damages for June 11, 2019.

*PIIC's Post-Decision Motion*

On December 18, 2018, PIIC filed a "Motion for Judgment Under C.C.P. § 631.8 To All of PIIC's Claims for Damages" and, two days later, filed a corrected motion.[7] PIIC argued that HACA failed to establish the Agreement "is not void under Business and Professions Code § 7028.15(e), and as a result, HACA has no claim against PIIC's Performance Bond or PIIC."

The trial court denied PIIC's motion on the grounds the motion was untimely, and the statute cited did not apply.

## DISCUSSION

We begin with a brief review of appellate practice. "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) It is the appellant's burden to affirmatively show error—" 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

---

been made known to HACA. The issuance of the bond for the named project, delivered by the contractor obligated to produce the bond, in a name associated with that contractor is a bond delivered complete and regular on its face. PIIC is estopped from denying its validity and enforceability."

[7] "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision . . ., or may decline to render any judgment until the close of all the evidence." (Code Civ. Proc., § 631.8, subd. (a).)

8

"This means an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557 (*Yield Dynamics*).) " 'It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no citation 'is furnished on a particular point, the court may treat it as waived.' " (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.)

In a statement of decision, a trial court need not " 'address all the legal and factual issues raised by the parties.' [Citation.] It 'is required only to set out ultimate findings rather than evidentiary ones.' " (*Yield Dynamics*, *supra*, 154 Cal.App.4th at p. 559.) A trial court's findings of fact "must be sustained if they are supported by substantial evidence, even though the evidence could also have justified contrary findings. [Citations.] . . . [T]his means an appellant who challenges a factual determination in the trial court—a jury verdict, or a finding by the judge in a nonjury trial—must marshal *all* of the record evidence relevant to the point in question and affirmatively demonstrate its insufficiency to sustain the challenged finding." (*Id*. at p. 557.) "Trial judges and juries are the exclusive judges of credibility and may disbelieve any witness. Trial courts are designed and responsible for determining facts. Appellate courts are designed to review errors of law." (*Rivard v. Board of Pension Commissioners* (1985) 164 Cal.App.3d 405, 412.)

PIIC has not met its burden of demonstrating error.

In its opening brief, PIIC took the position that this court should review the trial court's decision de novo. PIIC proceeded to reargue its case and

requested that we "perform that analysis and confirm that PIIC's Performance Bond never took effect and never provided any coverage for HACA's claims." After considering HACA's respondent's brief, however, PIIC concedes that it is not our role to reweigh the evidence that led the trial court to find equitable estoppel applied in this case. In its reply, PIIC "acknowledges that the trial court's factual findings supporting its finding of estoppel cannot be successfully attacked on appeal under the substantial evidence rule." This means PIIC no longer challenges the trial court's credibility and factual findings, including its determination that HACA staff and PIIC were referring to "the same contractor entity using different names" when HACA staff used the name "World Priority, LLC" in the Award Notice and Agreement and Page used "World Priority Construction" in the Bond.

Nonetheless, PIIC claims reversal is warranted because the Agreement is void under section 7028.15(e).[8] PIIC never argued this theory during the trial on liability.[9] Generally, " 'appealing parties must adhere to the theory

_____

[8] Section 7028.15(e) provides that, with exceptions not applicable here, "a bid submitted to a public agency by a contractor who is not licensed in accordance with this chapter shall be considered nonresponsive and shall be rejected by the public agency. . . . [A] local public agency shall, before awarding a contract or issuing a purchase order, verify that the contractor was properly licensed when the contractor submitted the bid. Notwithstanding any other provision of law . . . the registrar may issue a citation to any public officer or employee of a public entity who knowingly awards a contract or issues a purchase order to a contractor who is not licensed pursuant to this chapter. The amount of civil penalties, appeal, and finality of such citations shall be subject to Sections 7028.7 to 7028.13, inclusive. Any contract awarded to, or any purchase order issued to, a contractor who is not licensed pursuant to this chapter is void."

[9] PIIC did not cite section 7028.15(e) in any of its trial briefs, in its opening statement or closing argument at trial, or in any of the documents it filed before the final statement of decision was filed in November 2018.

10

(or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal.' " (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) Since PIIC did not argue section 7028.15(e) rendered the Agreement void during trial, the trial court "was under no obligation to address [the argument]." (*Colony Ins. Co. v. Crusader Ins. Co.* (2010) 188 Cal.App.4th 743, 751.)

PIIC did raise section 7028.15(e) in a motion ostensibly brought under Code of Civil Procedure section 631.8 made after the trial court filed its final statement of decision and nearly a year after the close of evidence. In a bench trial, a party may move for judgment under section 631.8 after the other party has completed its presentation of evidence. (Code Civ. Proc., § 631.8, subd. (a).) "The purpose of section 631.8 is to enable the court, when it finds at the completion of the plaintiff's case that the evidence does not justify requiring the defendant to produce evidence in defense, to weigh the evidence and make findings of fact as in other trials." (*Conolley v. Bull* (1968) 258 Cal.App.2d 183, 195.)

Here, the trial court observed such a motion for judgment "should come at the time in which the evidence was closed as to one party, and the motion would be for judgment because you do not feel that that other party proved their cause." The litigation was "well beyond that" point, however, as the bifurcated trial on liability had concluded and the parties were now in the damages phase of trial. We agree with the trial court that PIIC's motion was untimely. (Cf. *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 487 [issue decided in earlier phase of bifurcated trial should not be relitigated; otherwise "bifurcation of trial issues would

11

create duplication, thus subverting the procedure's goal of efficiency"].)  PIIC does not claim otherwise.

We have the discretion to address the application of purely legal questions to undisputed facts (*Colony Ins. Co. v. Crusader Ins. Co.*, *supra*, 188 Cal.App.4th at p. 751), but, here, we cannot say the facts pertaining to the newly-raised statute are undisputed; HACA correctly observes that PIIC's failure to raise section 7028.15(e) at trial denied HACA an opportunity to respond with evidence.  Even assuming for the sake of argument the facts were undisputed, we see no reason to exercise our discretion to consider PIIC's belated section 7028.15(e) argument in this case.

In any event, we observe that PIIC's new argument based on section 7028.15(e) cannot succeed on appeal in light of the trial court's unchallenged factual findings that HACA and PIIC were referring to the same contractor entity when they used the names "World Priority, LLC" and "World Priority Construction" respectively; that HACA requires a contractor's license number on bid forms, and LaPerle provided one; and that a HACA employee verified on the CSLB's website that the license number provided matched a name (World Priority) by which World Priority, LLC was known to HACA.  As HACA argues, PIIC's "various contract invalidity arguments based on there being a distinction [between World Priority, LLC and World Priority Construction] fall by the wayside" because the trial court found HACA and PIIC were referring to the same contractor entity whether they used the name "World Priority, LLC" or the name "World Priority Construction."

**DISPOSITION**

The judgment is affirmed.  Costs on appeal are awarded to HACA.

12

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A157691, *Philadelphia Indemnity Insurance Co. v. Housing Authority of the County of Alameda*