Filed 6/3/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LING MUELLER,<br><br>     Petitioner and Appellant,<br><br>v.<br><br>PAUL MUELLER,<br><br>     Defendant and Respondent. | A166577<br><br>(Mendocino County Super. Ct. No. SCUKCVFL202073826) |

Ling Mueller asks us to enforce a confidentiality clause in an agreement that explicitly states that the entire agreement is legally *un*enforceable. We agree with the family court that the confidentiality clause is unenforceable. The court therefore properly admitted testimony about statements she made in a collaborative law negotiation initiated by the agreement to dissolve her marriage.

We publish this case to highlight the importance of carefully drafting collaborative law agreements. Unlike mediations, our Legislature has not created an evidentiary privilege for collaborative law processes. (Compare Evid. Code, § 1119 with Fam. Code, § 2013.) If parties intend to keep the process confidential, they are responsible for drafting an enforceable contract that so provides.

**BACKGROUND**

**A.**

Collaborative law is a non-judicial alternative dispute resolution process commonly used for marriage dissolutions. (See

1

Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2023), ¶¶ 1:72.20, 3:511.)

Family Code section 2013 is California's collaborative law statute. It provides only that "(a) If a written agreement is entered into by the parties, the parties may utilize a collaborative law process to resolve any matter governed by this code over which the court is granted jurisdiction pursuant to Section 2000. [¶] (b) 'Collaborative law process' means the process in which the parties and any professionals engaged by the parties to assist them agree in writing to use their best efforts and to make a good faith attempt to resolve disputes related to the family law matters as referenced in subdivision (a) on an agreed basis without resorting to adversary judicial intervention."

The statute includes no confidentiality protection. While the Legislature has enacted an evidentiary privilege for mediations (Evid. Code, § 1119, subd. (b)), Ling[1] concedes that the collaborative law process typically does not qualify as a mediation because, as was the case here, no neutral person conducts the process. (See Evid. Code, §§ 1115, subd. (a), 1117, subd. (a).) Confidentiality is left to the parties to negotiate.

## B.

Ling and Paul Mueller married in 2009 and separated in 2017. During their marriage, they cultivated cannabis and buried the proceeds on their property.

The couple initially attempted to use collaborative law to wind down their marriage. At the first of two collaborative sessions, their attorneys explained the process and its differences from litigation, and they executed the agreement that is the focus of this appeal.

---

[1] We use the parties' first names for clarity.

On its first page, the agreement states, in plain language, that it creates no enforceable legal rights or contractual obligations: "Each of us understands that this document does not give either of us enforceable legal rights that we did not already have. We both understand that these good faith undertakings set out in this document are not legally enforceable contractual obligations. We also understand that other documents will be signed in the Collaborative Divorce process that are legally enforceable contracts, including the Stipulation and Order re: Collaborative Matter, and the retainer agreements we sign with our lawyers and other nonparty participants, if any. We are not relying on this Agreement to create legally enforceable rights. However, we both commit to abide by the letter and spirit [of] this Agreement and we each expect that the professionals involved will do the same."

The agreement proceeds to explain various aspects of the collaborative process. One clause addresses the confidentiality of the collaborative proceedings: "Communications related to collaborative matters made during the collaborative process are confidential and may not be disclosed to third parties. The parties agree that in any court or other proceeding, they will not request, subpoena or summons a collaborative lawyer, a collaborative party, or a nonparty participant in the collaborative process to make disclosure or testify as a witness regarding a communication made during the collaborative process, unless during the proceeding the agreement under this paragraph is expressly waived by all parties in writing." Confidentiality is also subject to waiver if one of the parties "expresses an intention to commit irreparable economic damage to joint property or property of either party."

The second collaborative session focused on the community's assets. However, Ling became angry and left the meeting abruptly when she was asked about investments she had

made using proceeds from the couple's marijuana operation that she had excavated. Two weeks later, she initiated divorce proceedings in family court. Both parties retained new counsel.

At a subsequent hearing on support and other issues, Paul subpoenaed both parties' collaborative attorneys to testify about statements Ling made at the second collaborative session. In opposition, Ling argued the confidentiality clause shielded her statements from disclosure. Paul contended the clause was merely advisory and "in the spirit of collaboration," conferring no legal rights or obligations. Further, he maintained, even were it enforceable, Ling had waived confidentiality by "taking, concealing, spending, or hiding" cash she had purportedly dug up on the couple's property.

The court found the agreement, including the confidentiality clause, was unenforceable. "It is not a contract. It doesn't give [the Muellers] any other duties other tha[n] what is provided in law. [¶] I think they went in knowing that while confidentiality is an important part in establishing trust and participating in collaboration, they also knew it was not enforceable that this confidentiality could be maintained." The court also found that, in any event, Ling had waived the confidentiality provision. Accordingly, it allowed the parties' collaborative attorneys to testify about the second collaborative session.

Paul's collaborative counsel testified Ling had "reluctantly" admitted she dug up and took cash the couple had buried, viewing it "as her savings from growing weed that she had received and retained." According to counsel, Ling said she had excavated at least $400,000, sent $100,000 to China to invest in real property, and invested another $200,000 in antiques. By her account, she had less than $100,000 left.

When Paul's collaborative counsel started to question Ling about her investments during the session, he testified, she "just

4

blew up. [¶] To say she was emotional wouldn't describe it. She was very angry. She jumped up, and I think hollered something like, 'We're going to court.'" It was clear to counsel that Ling "considered this her money, and these were her assets, and . . . she wasn't interested in hearing that it had to be considered in a division of the community property." Her sudden departure from the meeting ended the collaborative process.

Ling's collaborative counsel recalled the session differently. To his recollection, Ling insisted she had taken only $300,000 from the couple's $600,000 in buried cash, leaving "very little" after her $300,000 investment in antiques and Chinese real estate.

Paul testified consistently with his former counsel. Ling testified the couple had equally divided $400,000, not $600,000, in cannabis proceeds when they separated; that she never invested in property in China; and that she invested (and lost) around $140,000 in fake antiques.

The court found both parties had "significant credibility gaps" but that Paul's "testimony and differences in credibility on different days pales in connection to [Ling], whom I could not believe most of what she said."

At trial, Ling moved to exclude testimony about the couple's collaborative session, again asserting it was barred by the agreement's confidentiality clause. The court denied the motion, allowed Paul to testify to Ling's statements at the session, and took judicial notice of the collaborative attorneys' prior testimony. Finding Ling was not credible, it concluded she took more than her share of the community funds and ordered her to make a $161,077 equalizing payment.

## DISCUSSION

The sole issue on appeal, the admissibility of testimony about the second collaborative session, turns on whether the

confidentiality clause is enforceable despite the agreement's multiple statements that it creates no enforceable rights or obligations.  Ling contends the court erred in finding the confidentiality clause has no legal force, maintaining its interpretation was unreasonable and violated multiple canons of contract interpretation.  Alternatively, she contends principles of estoppel preclude Paul from claiming the confidentiality provision is unenforceable.  Neither contention has merit.

Our review is de novo because interpretation of the agreement does not turn on the credibility of extrinsic evidence. (*Saeta v. Superior Court* (2004) 117 Cal.App.4th 261, 267.)  In conducting that review, we must first determine whether the contract language is reasonably susceptible to Ling's interpretation.  If it is not, there is nothing more for us to decide. (Civ. Code, § 1638; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 524 (*R.J. Reynolds*).)

It is not.  At its outset, the agreement unequivocally states the parties' understanding that it does not "give either of us enforceable legal rights that we did not already have;" that "these good faith undertakings set out in this document are not legally enforceable contractual obligations;" and that, while the parties commit to "resolve their differences fairly and equitably" and abide by the agreement's "letter and spirit," they "are not relying on this Agreement to create legally enforceable rights."  There is no ambiguity here.  While the agreement sets ground rules for how the parties intended to proceed, the parties agreed that the agreement has no legal force.  We must give effect to its explicit language.  (*R.J. Reynolds, supra,* 107 Cal.App.4th at p. 524.)

It is an unusual agreement, to be sure.  But as Professor Witkin explains, "[t]he word 'contract' is often used with different meanings, e.g., as a synonym for 'agreement' or 'bargain.'  *It may refer to legally ineffective agreements*, or wholly executed transactions; to acts of parties, to a document that evidences

6

them, or to resulting legal relations." (1 Witkin, Summary of Cal. Law (11th ed., May 2023) Contracts, § 1, italics added.) Here, the agreement sets out a mutual understanding of the collaborative process that the parties agreed to follow. It is not a "contract" in the traditional sense of an agreement that, once entered, gives rise to a legally enforceable obligation. (See 1 Witkin, *supra,* § 1.) By its terms, rather, it provided an aspirational and nonbinding framework of a process for, ideally, achieving a mutually agreed-upon marital dissolution without resorting to litigation.

Ling disagrees. She maintains the more (or only) reasonable interpretation of the unenforceability language is that "a party cannot be forced to continue with collaborative dissolution." Well, yes, it does do that. But Ling does not grapple with the sweeping language that the parties used. If the agreement creates no "legally enforceable rights," but also creates a legally enforceable right to confidentially, it would be a contractual version of Schrödinger's cat—simultaneously enforceable and unenforceable. The agreement is not reasonably susceptible to that interpretation. (*See R.J. Reynolds, supra,* 107 Cal.App.4th at p. 524.)

Citing the canon that contracts are interpreted to avoid surplusage and give effect to every part where reasonably practicable (see Civ. Code, § 1641; *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 71), Ling asserts the confidentiality provision is enforceable because, in her view, it would otherwise be a nullity. We are unpersuaded. Her approach would leave the *unenforceability* language a nullity. Ling does not acknowledge, much less resolve, this paradox, and she cannot: if the confidentiality clause is interpreted as a binding obligation, it is impossible to give legal effect to both provisions. In contrast, the two are harmonized if, as the agreement directs, the confidentiality clause is construed consistently with the overarching provision that the parties

7

intend to abide by the agreement's terms although they are not legally binding.  The family court properly took that view.[2]

Ling's remaining arguments are for the most part premised on various other canons of contract interpretation.  We agree with Paul that they shed no light on the correct interpretation of an agreement that, by its plain language, creates no legally enforceable rights.  In any event, assuming some ambiguity and to the extent these points do not merely reiterate Ling's surplusage argument, they are meritless.

Ling maintains her interpretation conforms with local custom and usage because the agreement is " 'the standard' " form used in Mendocino County.  (See *Penn Sec. Life Ins. Co. v. Rising* (1976) 62 Cal.App.3d 302, 308 [general custom or usage must be considered in determining the intent of the parties unless the contract manifests a contrary intention].)  But there is no evidence the confidentiality clause has ever, let alone customarily, been accorded legal force in the county, even assuming common usage.

Ling also argues public policy compels her interpretation.  It may well be true that confidentiality would make most collaborative law negotiations more effective.  (Cf. *Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 14 ["confidentiality is essential to effective mediation"]

---

[2] To the extent Ling seems to argue extrinsic evidence supported her position, she is mistaken.  "Parol evidence is admissible only to prove a meaning to which the contractual language is 'reasonably susceptible'; not to flatly contradict the express terms of the agreement.  [Citation.]  Thus if the contract calls for the plaintiff to deliver to defendant 100 pencils by July 21, 1992, parol evidence is not admissible to show that when the parties said 'pencils' they really meant 'car batteries' or that whey they said 'July 21, 1992' they really meant 'May 13, 2001.' " (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 379.)

(*Foxgate*).) But Ling cites no authority that permits us to invoke public policy to make a contract term enforceable when the parties expressly agreed that it is unenforceable. In any case, the public policy considerations here are not one-sided. Ling is essentially asking us to create an evidentiary privilege that would bar the admission of highly relevant evidence. The Legislature reserves to itself the power to balance the public policies inherent in evidentiary privileges. (See Evid. Code, § 911; *Foxgate*, *supra*, 26 Cal.4th at p. 17.) Courts may not create new privileges unless required by constitutional law (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 373) and must enforce existing statutory privileges strictly, even when the results are inequitable. (*Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 152-156, 162-164.) Ling's policy argument should be addressed to the Legislature.

Ling's remaining contentions warrant only brief discussion. She has forfeited her estoppel argument, which relies on factual issues that the parties did not address in the family court because Ling did not raise the issue. (See *Doe v. Marten* (2020) 49 Cal.App.5th 1022, 1029 [estoppel is generally a question of fact unless reasonable minds could reach only one conclusion]; *Colony Ins. Co. v. Crusader Ins. Co.* (2010) 188 Cal.App.4th 743, 751 [estoppel claim not raised at trial forfeited for appeal].) She contends that there was insufficient evidence for the court to find the parties understood the agreement was unenforceable, but that argument is legally irrelevant. (See *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956 [contract interpretation is controlled by the objective intent evidenced by the contract language, not the parties' subjective intent].)

In sum, the family court correctly declined to enforce the confidentiality provision. We therefore do not address Ling's additional argument that the exception to it for irreparable

9

economic harm was inapplicable.  We also deny as unnecessary to resolution of this appeal (see *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276) her request for judicial notice of Family Code section 2013's legislative history and a judicial branch website concerning alternative dispute resolution in family law matters.

## DISPOSITION

The judgment is affirmed.  Paul is entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (a)(2).)

BURNS, J.

WE CONCUR:

JACKSON, P.J.
SIMONS, J.

*Mueller v. Mueller (A166577)*

10

Mendocino County Superior Court, No. SCUKCVFL202073826, Hon. Patrick Michael Pekin.

John L. Dodd & Associates and John L. Dodd for Petitioner and Appellant.

Vannucci Momsen Morrow and Colin W. Morrow for Defendant and Respondent.